OPINION
{¶ 1} Plaintiff-appellant, Paul Rozzi, appeals a decision of the Butler County Court of Common Pleas granting the summary judgment motions of defendants-appellees, The Labor Company ("TLC") and Star Personnel Services, Inc. ("Star"). For the reasons outlined below, *Page 2 
we affirm the decision of the trial court.
 {¶ 2} The incident that brought about this litigation occurred on September 10, 2002. At that time, Rozzi was employed by Prestige Display and Packaging, Inc. ("Prestige") as a receiving clerk. In addition to its permanent work force, Prestige often employed temporary labor through Star, a staffing agency, to meet its manufacturing needs. When Star's own pool of temporary employees could not meet Prestige's demands, Star called on TLC to supply back-up labor.
 {¶ 3} Richard Woods was a temporary employee hired by TLC upon Star's request for workers and placed with Prestige. The day in question was Woods' first day of work at Prestige. On that day, Rozzi mistakenly bumped Woods with his forklift. Woods looked up to find Rozzi smiling at him, and in response Woods violently attacked Rozzi. Rozzi sustained serious and permanent injuries in the attack.
 {¶ 4} After filing an initial complaint in July 2003 and an amended complaint in January 2004, the case proceeded on Rozzi's second amended complaint, filed in September 2005. The second amended complaint included claims of negligent hiring and breach of contract against Star, an intentional tort claim against Prestige, an assault claim against Woods, and a negligent hiring claim against TLC. The parties filed cross-motions for summary judgment. In a decision rendered on June 19, 2006, the trial court granted the summary judgment motions of TLC, Star, and Prestige and denied Rozzi's summary judgment motion. Rozzi appeals, raising two assignments of error.[1]
 {¶ 5} This court conducts a de novo review of a trial court's decision on summary judgment. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where (1) there are no genuine issues of material fact, (2) the moving party is entitled *Page 3 
to judgment as a matter of law, and (3) reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C). See, also,Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. We are mindful of these burdens in reviewing Rozzi's two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON BEHALF OF TLC."
 {¶ 8} Rozzi challenges the trial court's awarding of summary judgment to TLC. Rozzi argues that TLC was negligent in hiring Woods because Woods' violent attack on him was foreseeable. According to Rozzi, Woods' criminal history revealed his propensity for committing violent acts against others. Rozzi concludes that TLC's failure to conduct a pre-hiring investigation of Woods was negligent.
 {¶ 9} The trial court examined the following five-part test to determine whether Rozzi established a claim for negligent hiring: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.Evans v. Ohio State Univ. (1996), 112 Ohio App.3d 724, 739. The trial court reasoned that the first, second, and fourth elements of this test were established.[2] The court *Page 4 
focused upon the third element, TLC's knowledge, as the central issue.
 {¶ 10} We agree with the trial court's conclusion that Rozzi failed to establish the third element of the Evans test, that TLC had actual or constructive knowledge of Woods' violent tendencies. In Loman v. AirtronCo., Butler App. No. CA2000-02-019, 2001-Ohio-4202, this court noted that a plaintiff must show, "at a minimum, that the employer knew, or should have known, of the employee's criminal or tortious propensities." Id. at 3. Rozzi does not dispute that TLC did not have actual knowledge of Woods' violent propensities. Rather, Rozzi argues that TLC should have known of these propensities due to Woods' accessible criminal history. Woods' criminal record included traffic violations and charges of disorderly conduct, intoxication, drug abuse, assault, theft, trespassing, and domestic violence. Rozzi asserts that TLC was negligent in failing to obtain this information by accessing Woods' criminal record or by questioning Woods on the job application or in an interview.
 {¶ 11} TLC concedes that it did not conduct a background check on Woods and maintains that no one at TLC was aware of Woods' criminal history. But Rozzi has failed to direct this court to any legal authority imposing a duty upon an employer to conduct a criminal background check on a potential employee under these circumstances. To the contrary, Ohio law holds that no such duty exists. See, e.g.,Steppe v. Kmart Stores (1999), 136 Ohio App.3d 454, 467; Kuhn v.Youlten (1997), 118 Ohio App.3d 168, 177; Peters v. Ashtabula Metro.Housing Auth. (1993), 89 Ohio App.3d 458, 462. Accordingly, TLC did not violate any legal duty in failing to perform a background check on Woods.
 {¶ 12} We also observe that a criminal background check would not have revealed whether or not Woods had a propensity for violence. Of the offenses with which Woods was *Page 5 
charged, only the assault and domestic violence offenses suggest the involvement of violence. The assault charge was dismissed and the domestic violence charge was pled to as disorderly conduct, a misdemeanor. Accordingly, Woods' assault on Rozzi was not foreseeable to TLC even if Woods' prior convictions were considered.
 {¶ 13} In view of the information available to TLC upon hiring Woods, TLC cannot be held liable for negligent hiring. TLC did not conduct a criminal background check or otherwise inquire into Woods' criminal history, or conduct a formal interview prior to recruiting Woods from a homeless shelter. But the question of the unreasonableness of this hiring process does not end our inquiry. TLC had a duty to prevent theforeseeable criminal or tortious acts of its employees. Loman, Butler App. No. CA2000-02-019 at 3. So the heart of the matter is whether Woods' assault on Rozzi was foreseeable by TLC. Based upon the facts and circumstances of the case, we conclude that it was not.
 {¶ 14} It is only where an employer can anticipate criminal misconduct by an employee and the employer unreasonably takes the risk of that misconduct occurring that liability can be imposed upon the employer.Evans, 112 Ohio App.3d at 742. Woods testified that he had never had a physical altercation in the workplace prior to this incident, and that the incident would likely not have occurred if Rozzi had not bumped him with the forklift.
 {¶ 15} As stated, TLC did not have a legal duty to run a criminal background check on potential employees. And there was no contract in place between TLC and Star or between TLC and Prestige that placed a duty upon TLC to perform criminal background checks. Furthermore, neither Star nor Prestige requested that TLC check employees' criminal histories. Considering the totality of the circumstances, TLC had no actual or constructive knowledge of Woods' violent propensities and Woods' attack on Rozzi was not foreseeable. See Loman at 3.
 {¶ 16} Rozzi's first assignment of error is overruled. *Page 6 
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT ON BEHALF OF STAR PERSONNEL SERVICES, INC."
 {¶ 19} Next, Rozzi challenges the trial court's award of summary judgment to Star. Rozzi argues that Star breached a contract with Prestige by failing to conduct a criminal background check on Woods, and that he may recover for this breach as a third-party beneficiary to the contract. Rozzi also alleges that, based upon a theory of agency, Star is liable for the negligence of TLC in failing to assess Woods' violent tendencies before hiring him.
 {¶ 20} First, we shall address Rozzi's breach of contract argument. The construction or interpretation of contracts is a matter of law that this court reviews de novo. Lovewell v. Physicians Ins. Co. ofOhio, 79 Ohio St.3d 143, 144, 1997-Ohio-175. A person seeking to recover for breach of contract must first establish the existence of a contract. To establish the existence of a contract, the proponent must show that there was an offer, acceptance, and consideration. FPC Financial v.Wood, Madison App. No. CA2006-02-005, 2007-Ohio-1098, ¶ 11. A valid contract specifies essential terms such as the identity of the parties to be bound, the subject matter of the contract, and the consideration to be exchanged. Turner v. Langenbrunner, Warren App. No. 2003-10-099, 2004-Ohio-2814, ¶ 13.
 {¶ 21} The record contains no written contract between Prestige and Star. The document which Rozzi claims is a contract was a written proposal prepared for Prestige by Geoffrey Moores of Star to address Prestige's staffing needs. Under the proposal, Star agreed to provide criminal background checks for every job candidate at no charge to Prestige. Although Rozzi alleges that this proposal was accepted by Prestige, there is no evidence to that effect. There is no testimony that the proposal in fact governed the business arrangement between Star and Prestige. Rather, according to the deposition of Prestige *Page 7 
owner Tom Molyneaux, the business relationship between Star and Prestige was not governed by a formal agreement. So Rozzi failed to establish that Star was under any contractual obligation to perform criminal background checks for employees supplied to Prestige.
 {¶ 22} Next we address Rozzi's claim of negligent hiring against Star. Rozzi concedes that there was there was no written contract between Star and TLC. However, Rozzi argues that an agency relationship existed between Star and TLC at the time Woods was hired. Consequently, Rozzi asserts, Star may be held liable for the torts of TLC.
 {¶ 23} Rozzi again refers to the proposal prepared by Star for Prestige to support his argument that TLC was Star's agent. The proposal stated that the use of back-up agencies would remain invisible to Prestige so that Prestige only had to interact with Star. Prestige employees such as plant manager David Blair, human resources director Dave Pandilidis, vice president Jeff Laking, and owner Tom Molyneaux testified that they were not aware that TLC was serving as a back-up labor service for Star in supplying employees to Prestige. There was no way to distinguish the laborers supplied by Star from those supplied by TLC. In addition, TLC billed Star and not Prestige for the labor it supplied. According to Rozzi, all of this evidence proves that TLC was acting as an agent for Star, its principal. As a result, Rozzi asserts that TLC's alleged negligence in hiring Woods can be attributed to Star.
 {¶ 24} Because we have concluded that TLC was not negligent in hiring Woods, Rozzi may not recover against Star for negligent hiring on an agency theory. Comer v. Risko, 106 Ohio At.3d 185, 2005-Ohio-4559, ¶ 20. There is no negligence attributable to Star under these facts.
 {¶ 25} Rozzi's second assignment of error is overruled. *Page 8 
 {¶ 26} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] Rozzi does not challenge the trial court's awarding of summary judgment in favor of Prestige; consequently, Prestige is not a party to this appeal.
[2] The trial court's decision appears to contain a clerical error. The decision states the following: "In this case factors 1, 2, and 3 are clearly present. Woods was paid for his work by TLC; his actions on September 10, 2002 were inappropriate and not suited for the workplace; and those actions lead [sic] to the serious injury of Rozzi." The court mislabeled the third item it spoke of as element 3 of the Evans test, when in reality it was element 4 (the employee's act causing plaintiffs injuries). The court's decision goes on to examine element 3, TLC's knowledge of Woods' criminal behavior, as the central issue. *Page 1