OPINION
{¶ 1} Plaintiff-appellant, Amy Prewitt, appeals a decision from the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Alexson Services, Inc., dba Fairfield Center. We affirm the decision of the trial court.
 {¶ 2} On February 15, 2005, appellant, an employee at Fairfield Center, was sexually assaulted by a co-worker during work. Fairfield Center is a residential facility for the mentally *Page 2 
disabled. That morning, appellant and a female co-worker were cleaning the kitchen at one of the buildings. Demetrius Williams, a general assistant at the center, entered the kitchen and began to engage in horseplay with ladies. Williams asked appellant if she would have sex with him, and appellant repeatedly denied his advances. According to appellant, Williams forced her into the bathroom and sexually assaulted her.[1] Appellant filed suit against Alexson Services on the basis of negligent hiring, supervision and retention of Williams.
 {¶ 3} On January 24, 2000, Alexson hired Williams as a resident specialist one ("RS1") at Fairfield Center. As an RS1, Williams handled the direct care of Fairfield Center residents. At the time of the hiring, Alexson ran a criminal background check on Williams.[2] The background check revealed one misdemeanor charge for disorderly conduct[3] in a park and a misdemeanor speeding violation. As company policy, Alexson relies on self-disclosure by its employees to report any criminal convictions that occur after the employee is hired. Williams did not inform Alexson or Fairfield Center of any criminal convictions after being hired. Williams' job performance at Fairfield Center was reviewed 90 days after his date of hire and then once each year thereafter. Generally, Williams' performance reviews were favorable; however, over his five years of employment, appellant notes that he had "disciplinary issues in regards to job attendance and for sleeping on the job." *Page 3 
 {¶ 4} Appellant also cites an incident report involving Williams and a resident. The resident, a wheelchair-bound woman diagnosed as mentally retarded, accused Williams of hitting her in the face with pillows. The Fairfield Police Department and Butler County MRDD investigated the matter and concluded that the allegation was unfounded.[4] Further, appellant cites the deposition of Detective Sandy Sears of the Fairfield Police Department. According to Det. Sears, Williams was the subject of two investigations involving the alleged sexual abuse of patients.[5]
Appellant notes that Det. Sears recalled Williams as "odd." During the investigation, Williams told Det. Sears that he had bipolar disorder and was borderline schizophrenic. Williams claimed he had been prescribed medication, but was not taking it at the time. Det. Sears contacted Williams' superiors at Fairfield Center and informed them about his mental health issues.
 {¶ 5} Appellant also notes that Williams took an authorized leave of absence from work at Fairfield Center under the Family and Medical Leave Act from October 22, 2003 until December 22, 2003 due to mental health conditions. A form was provided to Fairfield Center by Williams' physician documenting that he was able to return to work with no restrictions.[6]
 {¶ 6} Williams' February 2005 review indicated that his performance was rated "Expected" in all categories except for a "Below Expected" rating in attendance. Williams' supervisor commented that he "had a close relationship to the consumers in the home. Many of the residents respond well to you with trust. You strive to have a professional attitude with guardians and family members, even when you say it is not easy." The *Page 4 
supervisor also noted that Williams had improved attendance and had no patient problems since receiving a warning nearly eight months earlier.
 {¶ 7} While investigating the sexual assault, Det. Sears stated that the co-worker who was cleaning the kitchen with appellant on February 15, 2005, had been raped by Williams on two previous occasions at the center. The co-worker informed the detective that she was willing to assist appellant with her case, but did not want to come forward with anything further in fear of her family's reaction. When directly asked if she was raped, the co-worker neither denied, nor confirmed, that the rapes occurred.
 {¶ 8} Following discovery, Alexson moved for summary judgment, arguing that it did not negligently hire, supervise or retain Williams because there was no evidence that Williams would sexually assault a co-worker. In opposition, appellant argued that Williams' mental health issues and record demonstrates that a genuine issue of material fact exists regarding Alexson's negligence. The trial court granted summary judgment in favor of Alexson, finding that appellant's action was barred by R.C. 4123.74 and that no genuine issue of material fact exists. Appellant timely appeals, raising two assignments of error. We will first address appellant's second assignment of error.
 Standard of Review {¶ 9} This court's review of a trial court's ruling on a motion for summary judgment is de novo. Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887. Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ. R. 56; Smith v. Five Rivers MetroParks (1999),134 Ohio App.3d 754, 760. The burden of demonstrating that there is no genuine issue of material fact is on the moving party. Harless v. WillisDay *Page 5 Warehousing Co. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made.Morris v. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 {¶ 10} Assignment of Error No. 2:
 {¶ 11} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS APPELLANT'S CLAIMS OF NEGLIGENT HIRING, RETENTION AND SUPERVISION INVOLVED PSYCHOLOGICAL AND PHYSICAL HARM WHICH ARE NOT BARRED BY R.C. 4123.74."
 {¶ 12} Alexson argues that Ohio's Workers' Compensation scheme, specifically R.C. 4123.74, bars appellant's cause of action. The trial court in this case agreed and granted summary judgment in favor of Alexson. In her second assignment of error, appellant argues the trial court erred in finding that R.C. 4123.74 grants immunity to Alexson and precludes her cause of action.
 {¶ 13} R.C. 4123.74 provides, in pertinent part, "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, * * * received * * * by any employee in the course of or arising out of his employment * * *."
 {¶ 14} In their respective briefs, both parties cite the Ohio Supreme Court's decision in Kerans v. Porter Paint Co. (1991),61 Ohio St.3d 486. In Kerans, the store manager at Porter Paint allegedly sexually molested Kerans by touching her breasts without consent, *Page 6 
putting his hand up her dress, forcing her to touch his genitalia, exposing himself to her, and requesting that she watch him masturbate. Id. at 487. Kerans filed suit against Porter Paint alleging, among other claims, negligent hiring and/or retention of the store manager. Id.
 {¶ 15} Alexson first claims that the sexual assault in this case is a compensable "injury" within the definition of R.C. 4123.01 and, as a result, appellant's claims are barred by R.C. 4123.74. The Supreme Court addressed a similar argument in Kerans.
 {¶ 16} At the time of the assault, R.C. 4123.01(C) defined "injury" to include "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. `Injury' does not include: (1) psychiatric conditions except where the conditions have arisen from an injury or occupational disease; (2) injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body; (3) injury or disability incurred in voluntary participation in an employer-sponsored recreation or fitness activity if the employee signs a waiver of the employee's right to compensation or benefits under this chapter prior to engaging in the recreation or fitness activity."
 {¶ 17} In Kerans, the Ohio Supreme Court stated "[t]here are several difficulties with [the company's] argument. First, it assumes that appellant's injury is an injury within the meaning of R.C. 4123.74, that is, within the definition of `injury' in R.C. 4123.01. We are not prepared to so hold at this time. The injury alleged by the appellant in this case is a non-physical injury with purely psychological consequences. * * * If the workers' compensation scheme were adjudged to be the exclusive remedy for claims based upon sexual harassment in the workplace, as [the company] urges, victims of sexual harassment would often be left without a remedy. Generally, injured employees receive coverage only for economic losses resulting from their accidents-medical bills, lost wages, and diminished earning capacity. * * * [V]ictims of sexual harassment generally do not suffer economic loss. * * * It would *Page 7 
contravene the legislative intent behind the workers' compensation laws for this court to hold that those laws provide the exclusive remedy for victims of workplace sexual harassment." Kerans at 488-489.
 {¶ 18} Alexson urges that the Kerans reasoning precludes appellant's claims. Alexson argues that since appellant's injury was physical, not simply emotional distress as in Kerans, workers' compensation is her exclusive form of relief.
 {¶ 19} We disagree. Regardless of the nature of appellant's injuries suffered as a result of the rape, the controlling inquiry is whether the injury was "accidental" or occurred "in the course of or arising out of the employment."
 {¶ 20} In Kerans, the Ohio Supreme Court continued by analyzing whether the harassment occurred "in the course of or arising out of the employment." To determine if the harassment occurred within the scope of employment, the court examined whether "the harassment took place during working hours, at the office, and was carried out by someone with the authority to hire, fire, promote and discipline the plaintiff." Id. at 490. The court in Kerans found that "there is a genuine issue of material fact as to whether [the store manager's] actions took place within the scope of his employment with the Porter Paint Company." Id. "While appellee contends that [the manager] was not Keran's supervisor, there is evidence in the record which suggest that he did hold that position * * *." Id. at 491.
 {¶ 21} Under R.C. 4123.74, an employer is not immune from liability for injuries not taking place in the course of or arising out of employment. "For an accident to `arise out of the employment as required under Workers' Compensation Act, it is necessary that the conditions or obligations of the employment put the employee in the position or at the place where the accident occurs; the accident need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." 82 American Jurisprudence 2d *Page 8 
(2008), Workers' Compensation, Section 238. "The controlling test of whether an injury arises out of the employment is whether the injury is a natural and probable consequence of the nature of the employment." Id. at Section 243.
 {¶ 22} A similar analysis in this case demonstrates that the rape did not occur "in the course of" or "arise out of" appellant's employment as a rape is not a "natural and probable consequence" of the nature of the employment. Moreover, the rape does not constitute an "accident" included in the definition of "injury."
 {¶ 23} In Kerans, the Ohio Supreme Court held that when an injury by an employee occurs outside the course of employment, "an employer may be liable for failing to take appropriate action where the employer knows or has reason to know that one of its employees poses an unreasonable risk of harm to other employees." Kerans at 491.
 {¶ 24} Similar to Kerans, in this case, appellant alleges that Alexson negligently hired, supervised and retained Williams.
 {¶ 25} Based on the foregoing, appellant's first assignment of error is sustained. The rape did not occur in the course of or arise out of the employment and, as a result, Ohio's workers' compensation is not appellant's exclusive remedy. However, this court must address appellant's second assignment of error to determine whether appellant's cause of action survives summary judgment.
 {¶ 26} Assignment of Error No. 1:
 {¶ 27} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS THERE WERE SEVERAL INCIDENTS INVOLVING MR. WILLIAMS'S [sic] WHICH MADE HIS PROPENSITY FOR TORTIOUS CONDUCT FORESEEABLE."
 {¶ 28} In her first assignment of error, appellant argues that genuine issues of material fact exist regarding Alexson's negligent hiring, retention and supervision of Williams. Appellant argues that, although Alexson performed a criminal background check, it did not *Page 9 
conduct any additional inquiry or investigation to discover that Williams' conviction for disorderly conduct was sexual in nature.[7]
Further, appellant argues that, in addition to the BCI background check, Alexson typically employs a third-party to provide additional information regarding potential employees' backgrounds. "However, in this case there is no record of this being performed." Appellant also cites the deposition testimony of Det. Sears, that Williams was investigated two separate times at Fairfield Center for allegations of sexual abuse and that Det. Sears gave a "heads up" to Alexson management of Williams' mental health issues. Finally, appellant claims that Williams' actions were foreseeable to Alexson when Williams took his FMLA leave of absence. Appellant argues that Alexson should have conducted an independent evaluation of Williams before allowing him to return to work.
 {¶ 29} An employer is liable for injuries due to negligent hiring, supervision and retention, if the plaintiff demonstrates: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of the employee's incompetence; 4) the employer's act or omission causing the plaintiff's injuries; 5) the employer's negligence in hiring or retaining the employee as the proximate cause of the plaintiff's injuries. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69. See, also,Peterson v. Buckeye Steel Castings (1999), 133 Ohio App.3d 715. Sexual harassment or assaulting behavior is per se incompetence. Payton v.Receivables Outsourcing, Inc., 163 Ohio App.3d 722, 2005-Ohio-4978, ¶ 42, citing Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486.
 {¶ 30} As the trial court in this case noted, the first, second and fourth elements are undisputed. While Williams was an employee of Fairfield Center, his actions on February 15, 2005 were incompetent and outside the scope of his employment; and those actions led to *Page 10 
appellant's injuries. At issue is whether Fairfield Center had knowledge or should have had knowledge that Williams would sexually assault a co-worker, and by hiring him and allowing him to continue to work, it committed negligence which was the proximate cause of appellant's injuries.
 {¶ 31} This court has held that in a negligent hiring context, a plaintiff must show "at a minimum, that the employer knew, or should have known, of the employee's criminal or tortious propensities."Rozzi v. Star Personnel Services, Butler App. No. CA2006-07-162,2007-Ohio-2555, ¶ 10, citing Loman v. Airtron Co., Butler App. No. CA2000-02-019, 2001-Ohio-4202. When determining the foreseeability of a criminal act, a court must look at the totality of the circumstances, and only when the circumstances are somewhat overwhelming can an employer be held liable. Evans v. Ohio State Univ. (1996),112 Ohio App.3d 734, 742.
 {¶ 32} A review of the record indicates that appellant has not demonstrated the requisite foreseeability. Before hiring Williams, Alexson performed a criminal background check through the Ohio BCI. Williams' conviction for disorderly conduct was included on the BCI report.[8] Appellant argues that Alexson should have conducted periodic background checks while Williams was employed at Fairfield Center. However, there is no evidence that any additional crimes would have shown up on these reports nor does appellant present any evidence that Williams actually committed any crime while he was employed at Fairfield Center. *Page 11 
 {¶ 33} Appellant also urges that Williams was accused of assaulting a resident at Fairfield Center. Appellant notes that the allegations were found to be "unsubstantiated," but implies that the assault actually occurred and shows that the rape was foreseeable. Appellant's argument is unpersuasive. Both the Fairfield Police and Butler County MRDD investigated the matter and concluded that the allegation was unfounded. The resident had a history of making false allegations. Further, Williams had four years of experience at the time of the allegation with no prior allegations of abuse and passed a lie detector test. There is no evidence that Alexson acted unreasonably during the situation.
 {¶ 34} Finally, appellant cites Williams' mental health issues. Appellant notes that Det. Sandy Sears called the administrators at Fairfield Center and told them that she believed that Williams was "odd" and was not taking his medicine for borderline schizophrenia and bipolar disorder. Further, appellant cites that Williams took an FMLA leave-of-absence for these issues. Appellant argues that Alexson should have conducted an independent evaluation of Williams' mental health before allowing him to return to work.
 {¶ 35} Like the other reasons appellant cites, this does not show foreseeability of the rape. Appellant testified that she never saw any signs that Williams was mentally unstable or threatening in any way. Even if Williams was suffering from these disorders, there is no evidence that they would make Williams violent or prone to commit a sexual assault. Further, Williams' doctor released him to return to work without restriction following his FMLA leave. Accordingly, appellant fails to demonstrate that a genuine issue of material fact exists regarding the negligent hiring, supervision or retention of Williams.
 {¶ 36} Appellant's first assignment of error is overruled.
 {¶ 37} Judgment affirmed.
YOUNG and WALTERS, JJ., concur. *Page 12 
Walters, J., retired, of the Third Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] Williams was convicted of rape in the Butler County Court of Common Pleas, which was affirmed by this court in State v.Williams, Butler App. No. CA2006-03-067, 2007-Ohio-2699.
[2] In addition to a background check through the Ohio Bureau of Criminal Identification and Investigation, Alexson also typically employs a third-party company, Human Resources Profile, to provide additional information on the potential employee's background. During discovery, Alexson did not provide any documentation that the additional check was performed. In her deposition, the administrator of Fairfield Center stated that she assumed the additional background check was performed because it was standard operating procedure but she had no specific recollection of it being done for Williams. Appellant argues that since no report was produced during discovery, Alexson did not perform the additional search and, therefore, contributed to Alexson negligent hiring of Williams.
[3] Williams was convicted of disorderly conduct as the result exposing himself in a public park. The details and underlying facts of the conviction were not included in the background check report.
[4] Alexson notes in its brief that the police found no evidence to substantiate the allegation, the resident in question had a history of making false allegations, and Williams had more than four years experience at the time of the report.
[5] No evidence was found showing that Williams sexually abused the patients and Williams continued to work at the center.
[6] The form indicated that Williams was diagnosed with "Schizo-Affective Disorder, Bipolar Type, Mixed" and stated that Williams was "hearing voices, depressed, angry, mood changes."
[7] Appellant notes that Detective Sandy Sears testified in her deposition that Williams' disorderly conduct conviction was for exposing himself in a public park that "is known for sexual activity."
[8] Appellant makes further allegations about the conviction; specifically citing the testimony of Det. Sears that the park is notorious for acts of "sexual activity." But appellant provides no evidence that Williams was engaging in unlawful sexual activity at the park or that Alexson had knowledge of the alleged reputation of the park. Accordingly, appellant is arguing that Alexson had some duty to inquire into the underlying facts of Williams' conviction. Regardless of appellant's argument, Williams' act of exposing himself in the public park was not a physical assault that would demonstrate to Alexson that Williams would potentially rape a fellow employee. Further, by her own testimony, Det. Sears stated in her deposition that "it would be quite a stretch" to suggest that Williams' disorderly conduct charge from 1999 demonstrates that he would be likely to commit a rape in 2005. *Page 1