[Cite as *Brown-Spurgeon v. Paul Davis Systems of Tri-State Area, Inc.*, 2013-Ohio-1845.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

KRISTINA BROWN-SPURGEON, et al.,    :

       Plaintiffs-Appellants,         :

  :

   - vs -

  :

PAUL DAVIS SYSTEMS OF         :
TRI-STATE AREA, INC., et al.,

  :

       Defendants-Appellees.

  :

CASE NO. CA2012-09-069

O P I N I O N
5/6/2013

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011CV00776

The Drew Law Firm Co., L.P.A., Michael D. McNeil, One West Fourth Street, Suite 2400, Cincinnati, Ohio 45202, for plaintiffs-appellants

Reminger Co., L.P.A., Robert W. Hojnoski, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202, for defendants-appellees, Paul Davis Systems and Jack Anthony Kleier

Law Offices of John D. Rodman, Richard S. Matas, 7100 East Pleasant Valley Road, Suite 210, Independence, Ohio 44131, for defendant-appellee, Phil Griffin, dba Renovated Solutions

**S. POWELL, J.**

{¶ 1} Plaintiffs-appellants, Kristina Brown-Spurgeon and Andrew Spurgeon, appeal a decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Paul Davis Systems of Tri-State Area, Inc. (PDS) and Phil

Griffin, doing business as Renovated Solutions.[1] For the reasons stated below, we affirm in part and reverse in part the decision of the trial court.

{¶ 2} In May 2010, Kristina Brown-Spurgeon's home was flooded. The home suffered damaged and required significant repairs. Kristina signed a "Work Authorization" with PDS to allow the company to complete these repairs. This contract contained an exculpatory clause which provided that PDS would not be liable for theft and damages arising out of the services performed pursuant to the contract. The clause did allow liability for actions that arise out of the PDS's sole negligence.

{¶ 3} After PDS and Kristina signed the contract, they discussed when the repairs would occur. Kristina and her future husband, Andrew Spurgeon, were preparing for their upcoming wedding and honeymoon and Kristina wanted to schedule the repairs in a month's time. The couple would be out of town for a couple of weeks and Kristina did not want to leave her home open to PDS unsupervised. The PDS employee persuaded Kristina to allow the company to perform the repairs while the couple was out of town. The PDS employee told Kristina that the company has high standards of whom they let in their customers' homes, they conduct background checks on their employees, and that PDS could put a key box on the front door of the home to secure the home. During this conversation, the employee never mentioned that PDS would sub-contract any of the work to another company.

{¶ 4} Kristina agreed to allow PDS access to her home in her absence to complete the repairs. Kristina also arranged for her sister to check on the home while she was out of town. On June 8, 2010, the renovation work began. Four days later, Kristina and Andrew left for their honeymoon.

---

1. The trial court did not grant summary judgment for the third defendant, Jack Kleier.

{¶ 5}  During the repairs, PDS assigned its employee to be the project manager.  PDS then hired Phil Griffin, the owner of Renovated Solutions, to perform a portion of the remodeling and restoration work.  PDS and Griffin signed a "Tradesperson Agreement" which provided that Griffin would conduct background checks on all persons working on jobs obtained through PDS.

{¶ 6}  While the Spurgeons were on their honeymoon, Kristina discovered that one of her credit cards had been used by someone in Ohio and the charges exceeded the credit limit.  Kristina immediately contacted her sister, who went to the home to investigate.  Her sister discovered that a wallet was missing and contacted the police and the general manager of PDS.  After an investigation, it was determined that Jack Kleier, one of the men working on the repairs, was responsible for the theft.

{¶ 7}  After returning from her honeymoon, Kristina discovered that prescription drugs, jewelry, electronics, and other personal property had also been taken from her home.  The value of the stolen items exceeded $18,000.  Kleier admitted to stealing all these items.  The prescription drugs that Kleier stole had Kristina's address on the bottle.  Kleier admitted to distributing these drugs.

{¶ 8}  After the theft, Kristina spoke to Griffin about Kleier.  Griffin stated that he knew Kleier personally, Kleier has drug issues, and he did not know that Kleier had been in the house.  Griffin's business partner stated that Griffin was involved in a "prison ministry" to give second chances to former prisoners and Kleier was one of the prisoners.

{¶ 9}  On July 24, 2010, Kristina was attacked in her home by an intruder.  Kristina observed that the intruder was wearing a black hoodie, was in his late twenties, and was not Kleier.  Kristina was beaten severely and suffered serious injuries.  The intruder did not steal anything from the home.  At the time of the attack, Kleier had been identified as the perpetrator in the June theft.

{¶ 10} On May 6, 2011, the Spurgeons sued PDS, Griffin, and Kleier. Subsequently, PDS and Griffin moved for summary judgment on all of the Spurgeons' claims. The trial court granted summary judgment in favor of PDS and Griffin.

{¶ 11} The Spurgeons filed this appeal, asserting a sole assignment of error:

{¶ 12} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS BY DETERMINING THAT PDS AND GRIFFIN WERE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIIMS ARISING FROM JACK KLEIER'S CONDUCT.

{¶ 13} This court's review of a trial court's ruling on a summary judgment motion is de novo, which means that we review the judgment independently and without deference to the trial court's determination. *Simmons v. Yingling*, 12th Dist. No. CA2010-11-117, 2011-Ohio-4041, ¶ 18. We utilize the same standard in our review that the trial court uses in its evaluation of the motion. *Id.*

{¶ 14} Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594 (12th Dist.), ¶ 7. To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party must then present evidence that some issue of material fact remains to be resolved; it may not rest on the mere allegations or denials in its pleadings. *Id.* All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St.2d 25, 28 (1970).

{¶ 15} This case involves multiple theories of tort liability against PDS and Griffin. We

begin by discussing PDS and Griffin's vicarious liability.

## Vicarious Liability

{¶ 16} Under this theory, the issue is whether PDS and Griffin are vicariously liable for Kleier's theft under respondeat superior for the actions of Kleier. Alternatively, Spurgeon maintains that PDS and Griffin are liable under the doctrine of agency by estoppel.

### a. Respondeat Superior

{¶ 17} Under the doctrine of respondeat superior, an employer is liable for an employee's negligence where work is performed for the master and the servant is subject to the control of the master in performing the work. *Boch v. New York Life Ins. Co.*, 175 Ohio St. 458 (1964). For the employer to be liable, the employee's acts must also be within the scope of the employment. *State Farm Mut. Auto. Ins. Co. v. King*, 12th Dist. Nos. CA2005-04-045, CA2005-04-049, 2006-Ohio-336, ¶ 38. "'Conduct is within the scope of employment if it is initiated in part to further or promote the master's business.'" *Id.* quoting *Martin v. Central Ohio Transit Auth.*, 70 Ohio App.3d 83, 92 (10th Dist.1990).

{¶ 18} Additionally, under respondeat superior a principal is generally not liable for the acts of an independent contractor. *Mendoza v. Bishop*, 12th Dist. No. CA2004-04-080, 2005-Ohio-238, ¶ 34. Whether one is an employee or an independent contractor depends on the facts of each case. *Id.* The key factual determination in making such a finding is who had the right to control the manner or means of doing the work. *Id.* As noted by the Ohio Supreme Court, in making such a determination,

> [t]he factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

*Bostic v. Connor*, 37 Ohio St.3d 144, 146 (1988).

{¶ 19} "Where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be determined by the court." *Touhey v. Ed's Tree and Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432 (12th Dist.), ¶ 9 citing *Bostic* at paragraph one of the syllabus.

{¶ 20} In the present case, PDS submitted an affidavit of Doug Wallin, the general manager of PDS, concerning whether Griffin was an independent contractor. Wallin averred that it hired the sub-contractor, Griffin, to complete a portion of the renovation work at Kristina's home. Wallin stated that Griffin is paid by the job, no employee of Griffin is on PDS's payroll, PDS does not participate in the hiring or supervision of Griffin's employees, PDS did not control the manner or means by which Griffin performed the repairs, PDS did not supply the tools or the materials for the work performed, and PDS and Griffin have separate places of business. Additionally, Wallin averred that PDS had no knowledge that Kleier was hired, Kleier had a criminal record, or that Kleier stole items from the Spurgeons' home.

{¶ 21} Additionally, evidence was presented from Griffin regarding whether Kleier was an independent contractor. Griffin agreed that his company was hired by PDS as a sub-contractor to perform a portion of the renovation work at the Spurgeons' home. Griffin stated that he then hired a sub-contractor, Chris Matisak, to perform the work. Griffin explained that Matisak was not subject to his direction or control, he did not control the manner or means of which Matisak performed the work, he did not control the hours worked, and Matisak used his own materials and tools.

{¶ 22} Kristina Spurgeon submitted a deposition in which she testified regarding the renovation work. She explained that she believed that PDS was performing all the renovation work on her home until her credit card was stolen. While on her honeymoon, Kristina spoke with PDS who informed her that an employee from the sub-contracting company stole the card. Kristina was not told the name of the company. After Kristina

returned from her honeymoon, PDS introduced her to Griffin and explained that Griffin was the sub-contractor they used for the project. During this meeting, Griffin stated that he knew Kleier personally, Kleier has drug issues, and that he did not know that Kleier had been in the house. Griffin and his business partner then went to pawn stores around the area to try and find some of Kristina's stolen jewelry.

{¶ 23} Kristina also testified in her deposition that after the theft, a portion of the renovation work remained to be completed at the Spurgeons' home. Kristina requested that a different sub-contracting company be used and initially PDS ignored her request and sent Griffin's crew. Griffin's business partner was present during this and told Kristina that they were involved in a "prison ministry" to give second chances to former prisoners and Kleier was one of the prisoners. The business partner also told Kristina that Kleier had been at her home for two days and that he has drug problems. Thereafter, Kristina learned that Kleier was left alone in the home to do drywall work.

{¶ 24} We find that the trial court did not err in determining that PDS and Griffin are not liable for the actions of Kleier under the doctrine of respondeat superior. The evidence established that Griffin was an independent contractor for PDS as PDS did not reserve the right to control Griffin's work. Nevertheless, the evidence did create a genuine issue of material fact as to whether Kleier was an independent contractor for Griffin. While Griffin averred that it did not have the right to control Kleier's work, Kristina testified that Griffin acknowledged that he hired Kleier and had the right to control his work. Therefore, there is a genuine issue of material fact regarding whether Kleier was an independent contractor for Griffin.

{¶ 25} However, even if Kleier was an employee of Griffin, Griffin is not liable for Kleier's actions because they were intentional acts that were outside the course and scope of Kleier's employment. There is no evidence that Griffin was aware of Kleier's theft, approved

of the theft, or that his theft was the ordinary and natural incident of the services Griffin provided. Additionally, Kleier's theft did not promote or facilitate Griffin's business. Therefore, the trial court properly found that PDS and Griffin cannot be liable for Kleier's actions under the doctrine of respondeat superior.

### b. Agency by Estoppel

{¶ 26} The Spurgeons argue that even if PDS and Griffin cannot be held liable under the doctrine of respondeat superior, they can still recover under agency by estoppel. Agency by estoppel allows a principal to be vicariously liable for the torts of an independent contractor. *Cyrus v. Home Depot USA, Inc.*, 12th Dist. No. CA2007-09-098, 2008-Ohio-4315, ¶ 13. An agency by estoppel is created where a principal holds an agent out as possessing authority to act on the principal's behalf, or the principal knowingly permits the agent to act as though the agent had such authority. *McSweeney v. Jackson*, 117 Ohio App.3d 623, 630 (4th Dist.1996). For a principal to be bound by an agent's acts, the evidence must show that: 1) the defendant made representations leading the plaintiff to reasonably believe that the wrongdoer was operating as an agent under the defendant's authority; and 2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his or her detriment. *Shaffer v. Maier*, 68 Ohio St.3d 416, 418 (1994).

{¶ 27} We begin by noting that this doctrine does not apply to Griffin because there is no evidence that Griffin made any representations to the Spurgeons regarding Kleier's agency relationship. Additionally, as Kristina did not know of Griffin's existence until after the theft occurred, there is no evidence that Kristina relied on the agency relationship to her detriment.

{¶ 28} However, we find that there are genuine issues of material fact as to whether PDS should be liable for Kleier's theft under agency by estoppel. In response to Kristina's reservations about allowing PDS into her home unsupervised, PDS made representations

that all its employees are background checked and that PDS follows the highest standards regarding whom they allow in customers' homes. Additionally, the PDS employee told Kristina that they could put a key box on the front door of her home to ensure that only the correct people were getting into her home. While PDS never stated that it would not use sub-contractors in the home, it also did not state that it would. PDS's representations about the background checks of its employees in response to Kristina's concerns would be meaningless if PDS allowed sub-contractors that have not been background checked into the home. Construing the evidence in the light most favorable to the Spurgeons, we find that these representations created a genuine issue of fact as to whether PDS made representations that the persons inside the Spurgeons' home would be their agents.

{¶ 29} Therefore, we find that the trial court erred in its vicarious liability analysis. While PDS and Griffin are not liable under the doctrine of respondeat superior, there is a genuine issue of material fact regarding whether PDS is liable under agency by estoppel. Therefore, the trial court erred in granting summary judgment to PDS under agency by estoppel.

## Direct Liability

{¶ 30} The Spurgeons' other claims against PDS and Griffin asserts that the companies are directly liable for Kleier's theft and the subsequent attack. These theories of liability fall under negligent hiring and supervision as well as a general negligence theory.[2] We will begin by addressing the general negligence theory.

---

2. In their brief, the Spurgeons frame this argument under the doctrine of "promissory estoppel." However, promissory estoppel falls under contract law and in this case neither the Spurgeons' complaint or memo contra to the motions for summary judgment asserted any contractual argument. Therefore, this issue is not properly before the court. *State v. Guzman-Martinez*, 12th Dist. No. CA2010-06-059, 2011-Ohio-1310, ¶ 9. Instead, the Spurgeons' argument is more properly addressed under a negligence theory.

a. Negligence

{¶ 31} To survive a properly supported motion for summary judgment in a negligence action, the Spurgeons must establish that genuine issues of material fact exist as to whether PDS and Griffin owed them a duty, PDS and Griffin breached that duty, and the breach was a proximate cause of their injury. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984). The existence of a duty is a question of law. *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 739 (10th Dist.1996). Whether a defendant owes a plaintiff a duty in a negligence case is a fundamental aspect of establishing actionable negligence, and if there is no duty or obligation of care, no legal liability may arise for the negligent act. *Wagner v. Ohio State Univ. Med. Ctr.*, 188 Ohio App.3d 65, 2010-Ohio-2561 (10th Dist.), ¶ 22.

{¶ 32} Generally, there is no duty to control the conduct of a third party by preventing him from causing harm to another, except in cases where there exists a special relationship between the actor and the third party which gives rise to a duty to control, or between the actor and another which gives the other the right to protection. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173 (1989). Therefore, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645 (1992).

{¶ 33} Additionally, to find liability in negligence against a defendant based upon the criminal act of a third party, the plaintiff must demonstrate that the criminal act was foreseeable. *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 191-192 (8th Dist.1990). "Injury is foreseeable if a defendant knows or should have known that his act was likely to result in harm to someone." *Simmers* at 645. The foreseeability of a criminal act depends on the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are "somewhat

- 10 -

overwhelming" that the defendant will be held liable. *Bess v. Traders World, Inc.*, 12th Dist. No. CA2001-06-063, 2001 WL 1652810, *2.

## 1. Theft

{¶ 34} The Spurgeons argue that PDS and Griffin had a duty to protect against Kleier's theft. The Spurgeons assert that this duty comes from the control over the Sprugeons' home as well as PDS's assurances of the honesty of its employees and Griffin's "Tradesperson Agreement." In granting summary judgment to PDS and Griffin, the trial court failed to address whether the companies had a duty to protect the Spurgeons from Kleier.

{¶ 35} Our first inquiry is whether PDS and Griffin had a "special relationship" with the Spurgeons. We find that PDS and Griffin had control over the Spurgeons' home and thus a "special relationship" existed between the parties. The evidence established that the Spurgeons allowed PDS in their home to perform renovation repairs. The Spurgeons set up a key box on the front door so only those who were "authorized" from PDS would have access to the home. Subsequently, PDS allowed Griffin, without the Spurgeons' knowledge or consent, access to their home while they were away. Besides Kristina's sister who also had access to the home and checked on the renovations occasionally, PDS and Griffin had sole access to the home.

{¶ 36} We also find that Kleier's theft was foreseeable. In regards to PDS, PDS's behavior shows the company knew it was foreseeable that an employee or independent contractor could steal from its customers. The PDS employee told Kristina that it conducts background checks on all of its employees and holds these employees to the "highest standards." Additionally, the language in the "Work Authorization" shows that theft is foreseeable because it attempts to exclude liability for specific items subject to theft. Further, the evidence showed that Griffin could have foreseen Kleier's theft. Kristina explained that Griffin's company operated a "second chance ministry" for those recently released from

prison, Kleier was employed as a result of this ministry, and that Kleier has drugs problems. Additionally, the "Tradesperson Agreement" between Griffin and PDS required Griffin to background check its employees. Therefore, it was reasonably foreseeable that if left unsupervised, Kleier would steal from the Spurgeons.

{¶ 37} Accordingly, PDS and Griffin owed the Spurgeons a duty to protect against Kleier's criminal acts. Additionally, there is a genuine issue of material fact as to whether PDS and Griffin breached that duty and whether that breach was a proximate cause of the harm to the Spurgeons. Thus, the trial court erred in granting summary judgment to PDS and Griffin under this theory.

## 2. Attack

{¶ 38} The Spurgeons also argue that PDS and Griffin owed a duty to protect Kristina against the assault that occurred on July 24, 2010. PDS and Griffin argue that they did not have a duty to protect Kristina from the attack and that there is no evidence to connect the attack to Kleier.

{¶ 39} "[N]egligence is a fact necessary to be shown; it will not be presumed." *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 388 (1950). A negligence claim based on conjecture, speculation, or the stacking of inference upon inference cannot succeed. *Hughes v. Kroger Co.*, 12th Dist. No. CA2005-10-099, 2006-Ohio-879. Instead, there must be evidence and not mere speculations connecting the wrongful act to the alleged tortfeasor. *Nationwide Agribusiness Ins. Co. v. J.D. Equip., Inc.*, 12th Dist. No. CA2011-06-012, 2012-Ohio-229, ¶ 21. *See Essig v. Sara Lane Corp.*, 10th Dist. No. 99AP-1432 (Aug. 1, 2000) (insufficient evidence to show maids took homeowner's jewelry when failed to establish evidence connecting theft to maids.)

{¶ 40} In Kristina's deposition, she testified that on July 24, 2010, a man came into her home through an unlocked back door, assaulted her, and knocked her unconscious. Kristina

explained this occurred about a month after Kleier's theft. She was unable to identify her attacker but stated that the man was not Kleier. Once inside the home, Kristina reported that the assailant stated, "Where are the drugs? Where are my drugs?" The man then assaulted Kristina. Nothing was taken from the home.

{¶ 41} In Kristina's and Andrew's depositions, they opined that the attack was coordinated by Kleier in relation for the criminal prosecution against him for the theft. To support this conclusion, they noted that nothing in the home had been stolen even though Kristina's purse and laptop were in plain sight. The couple also believed that another explanation for the attack was that the intruder was looking for drugs. They explained that during Kleier's theft, he stole some of her prescription medication and then distributed the drugs. The medication bottles that were stolen contained her address. In support of these theories, Kristina and Andrew noted that the home is located in a good area that experiences few home invasions.

{¶ 42} We find that the trial court did not err in granting summary judgment to PDS and Griffin regarding their liability for the assault. While the ordeal Kristina experienced was horrific, the Spurgeons have failed to put forth evidence to create a genuine issue of material fact to link Kleier to the assault. The only evidence regarding the assault was that the man was not Kleier, the man asked for drugs, stole nothing from the home, and assaulted Kristina. This evidence fails to show that Kleier was somehow involved in the assault. The Spurgeons are relying on their own speculations instead of evidence to connect Kleier and subsequently PDS and Griffin to the crime. Therefore the trial court did not err in granting summary judgment as to this issue.

b. Negligent Hiring and Retention

{¶ 43} The Spurgeons next claim that PDS and Griffin are liable for the damages resulting from Kleier's theft because the companies negligently hired and supervised Kleier.

The trial court granted summary judgment to PDS finding that Kleier was an independent contractor. The trial court also granted summary judgment to Griffin reasoning that Griffin could not be liable for Kleier's "incompetence" because it was a criminal act.

{¶ 44} This court has stated that when a party is seeking to prevail on a claim for the negligent hiring and supervision of an employee by an employer, the party must show: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or supervising the employee as the proximate cause of plaintiff's injuries. *State Farm*, 12th Dist. Nos. CA2005-04-045, CA2005-04-049, 2006-Ohio-336 at ¶ 41.

{¶ 45} An employer is liable for the negligent hiring or supervision when the employer elects to employ an individual who has a past history of criminal conduct which the employer had knowledge of or could have discovered through reasonable investigation. *Wagner*, 188 Ohio App.3d 65, 2010-Ohio-2561at ¶ 28, citing *Byrd v. Faber*, 57 Ohio St.3d 56, 62 (1991). Additionally, to prevail on a negligent hiring claim, the plaintiff must show that an employment relationship existed between the parties. An employment relationship does not exist if the "agent" has been determined to be an independent contractor under respondeat superior. *Hartung-Teter v. McKnight*, 3d Dist. No. 4-91-2 (June 26, 1991). *See Mills v. Deehr*, 8th Dist. No. 82799, 2004-Ohio-2338, ¶ 14.

{¶ 46} As discussed earlier, the evidence established that Kleier was an independent contractor in regards to PDS. Therefore, as there was no employment relationship between Kleier and PDS, the trial court did not err in granting summary judgment to PDS on this issue.

{¶ 47} Regarding Griffin, however, there are genuine issues of material fact as to whether Kleier was Griffin's employee. Therefore, the first element of negligent hiring and supervision, an employment relationship, is satisfied. Additionally, Kleier's criminal act

qualifies as "incompetence" under a negligent hiring or supervision theory. *See Wagner* at ¶ 28. An employer cannot escape liability under negligent hiring or supervision simply because his employee's "incompetence" was a criminal act. Griffin knew Kleier had a past history of criminal conduct and drug problems as evidenced by Kristina's deposition and Kleier's confession that he committed the theft. Further, there are genuine issues of material fact as to whether Griffin's negligence in hiring Kleier and failing to supervise him proximately caused the Spurgeon's damages.

{¶ 48} Thus, we find the trial court erred in granting summary judgment to Griffin on the negligent hiring and supervision claim. However, we find that the court did not err in granting summary judgment on the negligent hiring and supervision claim to PDS.

### Exculpatory Clause

{¶ 49} Last, we discuss whether PDS's exculpatory clause exempts it from liability. PDS argues that the exculpatory clause contained in the "Work Authorization" agreement exempts it from liability for Kleier's theft.

{¶ 50} Releases from liability for future tortious conduct are generally not favored by the law and are narrowly construed. *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 46-47 (1987). Such exculpatory clauses are to be strictly construed against the drafter unless the language is clear and unequivocal. *Id.* at 47. Additionally, while the execution of a release may bar claims of negligence, it cannot bar claims of willful and wanton conduct. *Harsh v. Lorain Cty Speedway*, 111 Ohio App.3d 113, 118 (8th Dist.1996), citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 90 (1992). Exculpatory clauses also cannot bar liability of a principal from acts of its agents that are willful or wanton. *Richard A. Bejian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 158 (1978). *See Ohio Cas. Ins. Co. v. D & J Distrib. & Mfg. Inc.*, 6th Dist. No. L-08-1104, 2009-Ohio-3806, ¶ 36. "Willful conduct" has been defined as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose

not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph two of the syllabus.

{¶ 51} Nonetheless, courts routinely apply such releases to bar future tort liability as long as the intent of the parties, with regard to exactly what kind of liability and what persons and/or entities are being released, is stated in clear and unambiguous terms. *Hague v. Summit Acres Skilled Nursing & Rehab.*, 7th Dist. No. 09 NO 364, 2010-Ohio-6404. On the other hand, where the language of the release is ambiguous or too general, courts have held that the intent of the parties is a factual matter for the jury. *Id.* "The pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved from liability for its own negligence." *Swatzentruber v. Wee-K Corp.*, 117 Ohio App.3d 420, 425 (4th Dist.1997).

{¶ 52} The back of the "Work Authorization" form contained a list of several "terms and conditions" of the contract between PDS and the Spurgeons. The exculpatory clauses were not bolded or highlighted in anyway. Paragraph 7 stated:

> *The contractor is not responsible for the theft,* disappearance of or damage to *jewelry, art objects, silver, gold, antiques, or other personal items* in or on the owner's property and owner agrees to properly remove, store, or protect such items. (Emphasis added.)

{¶ 53} Paragraph 11 stated:

> Release and indemnity waiver: *Notice is given that owner hereby releases and discharges contractor from any and all claims*, demands, and causes of action that owner has or hereafter may have * * * *against contractor arising out of the services* performed pursuant to this agreement or on account of any matter, act, or occurrence. Owner further agrees to indemnify, defend, and hold harmless contractor and its affiliates from and against all losses, liabilities, damages * * * based upon, arising out of, or otherwise in respect of any occurrence or damage arising out of

the work performed by contractor *excepting that which arises directly from contractor's sole negligence or from contractor's willful act.* (Emphasis added.)

**{¶ 54}** First, we find that the exculpatory clause does not release PDS from vicarious liability for Kleier's actions under the doctrine of agency by estoppel. As noted above, an exculpatory clause cannot release willful or wanton conduct. There are no genuine issues of material fact that in stealing from the Spurgeons, Kleier's theft was a wrongful act done purposefully with the knowledge of the likelihood of the resulting injury. Therefore, if the trier of fact finds PDS liable for Kleier's theft under agency by estoppel, the exculpatory clause cannot release PDS's liability under this theory.

**{¶ 55}** Second, we find that the exculpatory clause does not release PDS from direct liability. Paragraph 11 expressly allows for an exception in the exculpatory clause for damages that arise directly from "contractor's sole negligence." Under the general negligence theory, the Spurgeons allege that *PDS* was negligent in failing to protect Kristina from Kleier. Therefore, as this claim rests upon PDS's sole negligence, it falls within the exception in the clause.

## Conclusion

**{¶ 56}** The Spurgeons' sole assignment of error is sustained in part and overruled in part. The trial court did not err in granting summary judgment to PDS under the theories of negligent hiring and supervision and respondeat superior. Furthermore, the trial court did not err in granting summary judgment to Griffin under the theory of respondeat superior. However, the court did err in granting summary judgment to PDS under both the vicarious liability claim due to the doctrine of agency by estoppel and a general negligence theory. Additionally, the court erred in granting summary judgment to Griffin under theories of negligence and negligent hiring and supervision. Furthermore, we note the trial court's granting of summary judgment on Andrew's loss of consortium was predicated on summary

judgment to the other claims. Therefore, summary judgment on this issue was also improper.

{¶ 57} Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON, P.J. and PIPER, J., concur.