[Cite as *Jackson v. Hogeback*, 2014-Ohio-2578.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


AARON J. JACKSON,                           :

    Plaintiff-Appellant,                    :          CASE NO.   CA2013-10-187

                                 :          O P I N I O N
  - vs -                                                        6/16/2014

                                 :

DERRICK GENE HOGEBACK, et al.,              :

    Defendants-Appellees.                   :


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-11-4137


Roger D. Staton, Timothy J. Meloy, 355 Summit Street, Lebanon, Ohio 45036, for plaintiff-appellant

Derrick Gene Hogeback, 3726 Pamejera Drive, Oxford, Ohio 45056, defendant-appellee, pro se

McCaslin, Imbus & McCaslin, Thomas J. Gruber, Michael P. Cussen, 900 Provident Bank Bldg., 632 Vine Street, Cincinnati, Ohio 45202, for defendants-appellees, Thomas Scott & Tari L. Spurlock and Presidio Pines, LLC

Timothy B. Spille, Mark A. MacDonald, Jennifer K. Nordstrom, 105 East Fourth Street, Suite 1400, Cincinnati, Ohio 45202-4011, for third-party plaintiff, Westfield Insurance Co.

McCullough Hyde Hospital, 110 Poplar Street, Oxford, Ohio 45056, defendant

Christ Hospital, 2139 Auburn Avenue, Cincinnati, Ohio 45219, defendant

The University Hospital, 234 Goodman Street, Mail LOC 0774, Cincinnati, Ohio 45219, defendant

Spectrum Hand Center, 222 Piedmont Avenue, Suite 7100, Cincinnati, Ohio 45219, defendant

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Aaron J. Jackson, appeals from decisions by the Butler County Court of Common Pleas denying his motion for summary judgment and subsequently granting a directed verdict in favor of defendants-appellees, Thomas Scott Spurlock, Tari L. Spurlock, and Presidio Pines, LLC.

## I. FACTS

{¶ 2} On November 29, 2010, appellant was injured by Derrick Gene Hogeback when Hogeback repeatedly struck him, breaking appellant's jaw and injuring his hand. Prior to striking appellant, Hogeback had gotten into a verbal altercation with another man, Sean Hickey, which escalated to a point where Hogeback physically accosted Hickey by choking him. Appellant attempted to stop the choking of Hickey which resulted in Hoegeback repeatedly striking appellant. The incident occurred at the construction site of a bed and breakfast, to be known as Presidio Pines, LLC (Presidio Pines). Husband and wife, Tari and Thomas Spurlock are the owners of Presidio Pines. They were renovating their farm house into a bed and breakfast. In April 2010, Tari Spurlock (Spurlock) hired Hogeback to complete general carpentry work for the project.

{¶ 3} On the day of the incident, OLC Excavating and Construction, LLC (OLC Excavating), a contractor for Presidio Pines, was at the worksite with its owner, Mike Wengler and his employee, Hickey. OLC Excavating was finishing work on the driveway. Appellant had previously worked for OLC Excavating at Presidio Pines, but he was not scheduled to work that day. Appellant had stopped by to visit with friends and see if there was any work available. Hogeback was not expected to be at the worksite that day, but also stopped when

he saw people there working. Upon arriving and viewing Wengler and Hickey loading equipment onto a trailer, Hogeback became "loud, belligerent, and aggressive" towards Hickey and began calling Hickey offensive names. A verbal altercation between the two ensued which escalated when Hogeback grabbed Hickey by the throat and choked him. When appellant attempted to break up the altercation, Hogeback grabbed appellant and began punching him.

{¶ 4} The police were called to the scene. Wengler and Hogeback also called Spurlock. Wengler told Spurlock that Hogeback punched appellant. Spurlock responded, "[t]his is, oh, no, no, this has happened before. This isn't good." When Spurlock arrived on the scene, she also reportedly stated, "this has happened before," and "oh, no, not again."

{¶ 5} Appellant filed suit against Hogeback and his alleged employers, Thomas and Tari Spurlock, claiming, among other things, assault and battery, negligence, vicarious liability, and negligent hiring, supervision, and retention. The complaint was later amended to include Presidio Pines as a defendant as the Spurlocks were the owners and operators of the business, Presidio Pines.

{¶ 6} The Spurlocks and Presidio Pines (collectively appellees) filed a motion for summary judgment claiming they were not liable for Hogeback's actions as he was an independent contractor rather than an employee. Appellant filed his own motion for summary judgment on the issue of liability. The trial court denied both motions, finding there were genuine issues of material facts as to whether Hogeback was an employee or independent contractor as well as genuine issues of material fact as to appellees' resulting liability.

{¶ 7} The case proceeded to a jury trial. After appellant presented his case and rested, appellees moved for a directed verdict. The court granted the motion. The case

remained against Hogeback, and the jury returned a verdict in favor of appellant.[1]

{¶ 8} Appellant now appeals the trial court's decision denying his motion for summary judgment and its decision granting appellees' motion for directed verdict, raising two assignments of error for review.

## II. ANALYSIS

## A. Summary Judgment

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY.

{¶ 11} In his first assignment of error, appellant asserts the trial court erred in denying his motion for summary judgment as the undisputed evidence demonstrated Hogeback was an employee and appellees were liable for his actions as they knew or had reason to know of his dangerous propensities.

{¶ 12} Generally, this court's review of a trial court's ruling on a summary judgment motion is de novo, meaning we review the judgment independently without deference to the trial court's determination. *Simmons v. Yingling*, 12th Dist. Warren No. CA2010-11-117, 2011-Ohio-4041, ¶ 18. However, any error in denying a summary judgment motion is rendered moot or harmless if the motion is denied due to the existence of genuine issues of material fact, and a subsequent trial results in a verdict in favor of the party who did not move for summary judgment. *South v. Browning*, 12th Dist. Warren No. CA2012-09-088, 2013-Ohio-1491, ¶ 27, citing *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 157 (1994). Essentially, "a party may not 'appeal an order denying summary judgment after a full trial on the merits' because that 'order retains its interlocutory character as simply a step along the

---

1. Hogeback is not a party to this appeal.

route to final judgment.'" *Citibank, N.A. v. Ebbing*, 12th Dist. Butler No. CA2012-12-252, 2013-Ohio-4761, ¶ 11, quoting *Ortiz v. Jordan*, ___ U.S. ___, 131 S.Ct. 884, 888-889 (2011). Once a case proceeds to trial, the full record is developed and this record supersedes the limited record existing at the time of the summary judgment motion. *Ebbing* at ¶ 11, citing *Ortiz* at 888-889; *see also Calvary S.P.V.I., L.L.C. v. Krantz*, 8th Dist. Cuyahoga No. 97422, 2012-Ohio-2202, ¶ 9.

{¶ 13} In denying appellant's summary judgment motion, the trial court found there were genuine issues of material fact regarding Hogeback's status as an employee or independent contractor. The trial court further found there were genuine issues of material fact as to whether Hogeback's actions were "in furtherance of the employer's interest" or if his actions were "outside any reasonable limits of employment." Accordingly, as the trial court's decision turned on the existence of questions of fact, and later proceeded to a jury trial, any error in denying the motion for summary judgment is rendered moot. By allowing the case to proceed to trial, the trial court permitted the record to be expanded and afforded appellant the opportunity to fully develop his case. Therefore, we find no error in the trial court's decision denying appellant's motion for summary judgment.

{¶ 14} Appellant's first assignment of error is overruled.

**B. Directed Verdict**

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT IN FAVOR OF APPELLEES TARI SPURLOCK, SCOTT THOMAS [SIC] SPURLOCK[,] AND PRESIDIO PINES, LLC.

{¶ 17} In his second assignment of error, appellant asserts the trial court erred in granting a directed verdict in favor of appellees as the trial court "ignored all possible avenues available for the jury to find liability." In arguing the trial court erred in directing a

verdict in favor of appellees, appellant argues Hogeback was an employee of appellees and asserts various theories of liability. Specifically, appellant asserts appellees are liable for Hogeback's actions because (1) Hogeback's conduct was within the scope of employment; (2) appellees ratified Hogeback's conduct by continuing his employment; (3) appellees failed to exercise reasonable care in controlling Hogeback; and (4) appellees were negligent in retaining, hiring, or supervising Hogeback. Appellant's arguments as to appellees' liability in this case, therefore, fall under two general categories: vicarious liability and direct liability.

{¶ 18} Prior to determining appellees' possible liability in this case, the trial court noted it believed Hogeback's employment status was a "question of fact for the jury to resolve." Nevertheless, for the purpose of deciding the motion for a directed verdict, the trial court, in construing the evidence in a light most favorable to appellant, assumed Hogeback was an employee and thereafter found appellees were not liable for his actions. In finding appellees were not liable and directing a verdict in their favor, the trial court reasoned:

> Mr. Hogeback, was not on the clock. Therefore, he was not within any scope of his employment, but even if you can get past that issue, I believe his conduct was such that he left the scope of employment, particularly since that the assault was not against a contractor or an employee of a contractor, but was against a third person who just simply happened to be present.

> And therefore, I can't think of anything as a matter of law which would say that - - that him assaulting Mr. Jackson was in the furtherance of, or facilitated, or promoted the business purpose of the Spurlocks' or Presidio Pines. So I'm going to grant the motion for a directed verdict at this point.

For purposes of deciding this appeal, we similarly assume Hogeback's status was that of an employee.[2]

---

2. We note this issue remains outstanding and we make no finding, as a matter of law, regarding Hogeback's employment status. Moreover, we note Hogeback's status, if found to be an independent contractor, could have been determinative as to appellant's vicarious liability claims, as generally, "a principal is not liable for the acts of an independent contractor." *Cyrus v. Home Depot USA, Inc.*, 12th Dist. Clermont No. CA2007-09-098, 2008-Ohio-4315, ¶ 9. However, one's status as an independent contractor does not render the employer impermeable

**1. Standard of Review**

{¶ 19} "A trial court's decision to grant a motion for a directed verdict involves a question of law, and therefore, an appellate court's review of that decision is de novo." *Downard v. Rumpke of Ohio, Inc.*, 12th Dist. Butler No. CA2012-11-218, 2013-Ohio-4760, ¶ 16, citing *White v. Leimbach,* 131 Ohio St.3d 21, 2011-Ohio-6238, ¶ 22.

{¶ 20} The standard for granting a directed verdict is set forth in Civ.R. 50(A)(4), which provides:

> When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 21} A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury. *Snider v. Nieberding*, 12th Dist. Clermont No. CA2002-12-105, 2003-Ohio-5715, ¶ 6. Under this standard, the motion must be denied if reasonable minds could come to different conclusions as to the evidence presented on the essential elements of the claim. *Rockwood v. West Chester Nursing and Rehab. Residence, LLC.*, 12th Dist. Butler No. CA2006-10-250, 2007-Ohio-7071, ¶ 8. However, where reasonable minds can come to one conclusion based on the evidence submitted and that conclusion is adverse to the non-moving party, then the motion should be granted. *Leimbach*, 2011-Ohio-6238 at ¶ 22. "The 'reasonable minds' test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." *Leimbach* at ¶ 22, quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 3. In ruling on a motion for a directed

---

to all liability. Rather, as indicated later in this opinion, the type of employment relationship attributable to Hogeback may have little significance with regards to appellees' direct liability in this case.

verdict, "[t]he trial court need not consider either the weight of the evidence or the credibility of the witnesses[.]" *Collins v. Admr. Bur. Of Workers' Comp.,* 12th Dist. Madison No. CA2006-12-54, 2007-Ohio-5634, ¶ 14.

{¶ 22} Accordingly, the question before this court is, after construing all the evidence in favor of appellant, was there sufficient evidence to raise an issue that should have been submitted to the jury.

## 2. Vicarious Liability

{¶ 23} Appellant asserts appellees are vicariously liable for Hogeback's actions as the assault was committed within the scope of his employment. Alternatively, if the actions are found to be outside the scope of employment, appellant argues appellees ratified Hogeback's conduct.

{¶ 24} "[G]enerally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Natl. Union Fire Ins. Co. of Pittsburg, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 20. In order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 42; *Brown-Spurgeon v. Paul Davis Sys. of Tri-State Area, Inc.*, 12th Dist. Clermont No. CA2012-09-069, 2013-Ohio-1845, ¶ 17. "Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.'" *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991). An intentional and wilful attack committed by an agent or employee, "to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible." *Groob* at ¶ 42. Stated otherwise, "an employer is not liable for the independent self-serving acts of his employees which in no way facilitate or promote his business." *Osborne v. Lyles*, 63 Ohio St.3d 326, 330 (1992).

{¶ 25} Appellant argues Hogeback's actions were within the scope of employment because the evidence at trial indicated Hogeback had no personal ill will toward appellant. Appellant further asserts Hogeback's actions were within the scope of employment as his duties contemplated the necessity of using physical force, and therefore the use of such force did not transform the conduct into an "independent course of conduct."

{¶ 26} Whether Hogeback was initially acting within the scope of his employment at the time he first stopped at Presidio Pines on the day of the incident is irrelevant.[3] For purposes of our analysis, the relevant question is whether Hogeback was acting within the scope of employment at the time he assaulted appellant. The trial court found, and we agree, Hogeback's act of punching appellant several times, injuring his hand and breaking his jaw, was a clear departure from Hogeback's employment and did not in any way facilitate or promote the business of appellees. *See Bryd* at 58-59. There is no evidence that Hogeback's assault on appellant was an ordinary and natural incident of the services Hogeback provided. Moreover, although the record indicates there were no personal grievances between Hogeback and appellant, we find this fact alone does not place Hogeback's actions within the scope of employment. We are also unpersuaded by appellant's suggestion that this type of physical violence may be an acceptable means to gain someone's attention and cooperation at a construction jobsite. The only reasonable conclusion to be drawn from the evidence is that Hogeback simply could not control his temper, and his actions were independent, self-serving and in no way facilitated or promoted appellees' business. Accordingly, the assault was outside the scope and course of Hogeback's employment, and the trial court properly found appellees could not be held vicariously liable.

---

3. The record indicates Hogeback had some supervisory duties at Presidio Pines, and he testified he stopped on the day of the incident to check on the work being done and ensure it was being done correctly.

{¶ 27} Appellant asserts that even if the assault was outside the scope of employment, appellees are still liable because "appellees ratified the wrongful actions of Hogeback and continued him in his position as a laborer and supervisor on the jobsite after the injury had been inflicted." We find no merit to this argument. The continued employment of an individual who committed an intentional tort is not, in and of itself, enough to show ratification by an employer. *Fulwiler v. Schneider*, 104 Ohio App.3d 398, 407 (1st Dist.1995), citing *Fisher v. Herring*, 88 Ohio App. 107, 112 (5th Dist.1948); *see also Amato v. Heinika Ltd.*, 8th Dist. Cuyahoga No. 84479, 2005-Ohio-189, ¶ 15-18 (finding owner's failure to terminate employee who struck a patron was insufficient to establish employer's ratification of the assault).

{¶ 28} Based on the foregoing, we find no vicarious liability could have attached to appellees under the doctrine of respondeat superior. Accordingly, the trial court appropriately directed a verdict in favor of appellees on appellant's vicarious liability claims.

### 3. Direct Liability

{¶ 29} Appellant's other claims generally assert appellees are directly liable for Hogeback's assault. Essentially, appellant claims appellees are liable for their own negligence in creating the situation which permitted the assault on him to occur.

### a. Duty to Control

{¶ 30} Appellant generally argues employers are liable "where the employee acts outside the scope of employment on the employer's premises and the employer knew or had reason to know that it could control the employee's conduct and knew or had reason to know of the necessity and opportunity to exercise that control, and failed to do so." Although appellant makes general references to appellees' "duty to control" Hogeback, he fails to provide any argument as to how this duty applies in this case, how such a duty requires a result in his favor, or which portions of the record support his contention. Accordingly,

appellant's brief on this issue fails to meet the requirements under App.R. 16 (A)(7) (requiring appellant's brief to contain the contentions with respect to each assignment of error and the reasons in support of the contentions, with citations of the authorities, statutes, and parts of the record which appellant relies). This court is entitled to disregard an assignment of error if a party fails to argue an assignment of error as required by App.R. 16(A). App.R. 12(A)(2); *see also Bowles v. Singh*, 12th Dist. Clermont No. CA99-10-094, 2000 WL 1051847, * 2 (July 31, 2000).

{¶ 31} Moreover, in support of his proposition that appellees had a duty to control, appellant only cites to Section 317 of the Second Restatement of Torts (Section 317) and *Vance v. Consol. Rail Corp.* , 73 Ohio St.3d 222 (1995) for the source of this duty.[4] The court in *Vance* made it clear that the decision had virtually no precedential value to a general negligence case that may arise under Ohio law. *Vance* at 240. Moreover, in Ohio, the principle set forth in Section 317 generally imposes a duty on an employer "to provide its employees with a safe environment, and thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees." *Kerans v. Porter Paint Co.*, 61 Ohio St.3d 486, 493 (1991). Accordingly, as appellant was not an employee of appellees at the time of the assault, Section 317 is inapplicable in this case.

---

4. 2 Restatement of Law 2d, Torts (1965) 125, Section 317 (Section 317), provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.

As appellant has failed to explain how the duty to control is applicable to this case, we find the trial court did not err in directing a verdict on this issue.

### b. Negligent Hiring, Supervision, and Retention

{¶ 32} Finally, appellant asserts the trial court erred in granting the motion for a directed verdict because there was evidence which indicated appellees were liable for the negligent hiring, retention, and supervision of Hogeback.

{¶ 33} An employer is liable for injuries due to negligent hiring, supervision, and retention of an employee, if the plaintiff demonstrates: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising, or retaining the employee as the proximate cause of plaintiff's injuries. *Prewitt v. Alexson Servs., Inc.*, 12th Dist. Butler No. CA2007-09-218, 2008-Ohio-4306, ¶ 29; *Brown-Spurgeon*, 2013-Ohio-1845 at ¶ 44.

{¶ 34} In the context of negligent hiring, supervision, or retention, liability on behalf of the employer results by way of its own negligence in selecting a person to employ or allowing a person to continue to work, where the employer, knows or should have known of the hired individual's violent or dangerous propensities. *See Brown-Spurgeon* at ¶ 45. The focus of these claims is on the employer's knowledge of the hired individual's violent, criminal, or tortious propensities and whether such knowledge would have prevented the employment relationship. *See Stephens v. A-Able Rents Co.*, 101 Ohio App.3d 20, 26 (8th Dist.1995), citing *Byrd* 57 Ohio St.3d at 62. At a very minimum, a plaintiff must show that the employer knew or should have known of the hired person's criminal or tortious propensities. *Rozzi v. Star Personnel Services, Inc.*, 12th Dist. Butler No. CA2006-07-162, 2007-Ohio-2555, ¶ 10, citing *Loman v. Airtron Co.*, 12th Dist. Butler No. CA2000-02-019, 2001-Ohio-4202, * 3; *see also Byrd* at 61 ("the plaintiff must plead facts which indicate that the individual hired had a

past history of criminal, tortious, or otherwise dangerous conduct about which the [employer] knew or could have discovered through reasonable investigation"). The foreseeability of a criminal act depends upon the knowledge of the employer, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are "somewhat overwhelming" that the employer will be liable. *Brown-Spurgeon* ¶ 33; *Prewitt* at ¶ 31. "The mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant * * * it is only where the misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed." *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 21, quoting *Wagner v. Ohio State Med. Ctr.*, 188 Ohio App.3d 65, 2010-Ohio-2561, ¶ 25 (10th Dist.).

{¶ 35} As discussed above, for purposes of this appeal, we have assumed Hogeback was an employee of appellees, and therefore the first prong is met.[5] In addition, Hogeback's assault on appellant was a criminal act and therefore qualifies as "incompetence" for a negligent hiring, supervision, or retention claim. *Brown-Spurgeon* at ¶ 47, citing *Wagner* at ¶ 22. It is also clear that Hogeback's act caused appellant's injuries, thus the fourth prong is also met. Accordingly, the viability of appellant's claims is therefore dependent upon whether he presented evidence upon which the jury could have concluded: (1) appellees had knowledge of Hogeback's incompetency and (2) the assault on appellant was foreseeable.

---

5. Although for purposes of this appeal, we have assumed Hogeback was an employee, we note that an employer has a similar duty to exercise reasonable care in the selection and retention of its independent contractors. *See Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 257 (1990) ("It is well established that an employer must exercise reasonable care in the selection of a competent and careful independent contractor"). Accordingly, for negligent hiring and retention claims, it is irrelevant if the worker is classified as an employee or an independent contractor as some sort of employment relationship existed, regardless of its type. *See Hartings v. Xu*, 3d Dist. Mercer No. 10-13-11, 2014-Ohio-1794, ¶ 73; *Rodic v. Koba*, 8th Dist. Cuyahoga No. 77599, 2000 WL 1807042 (Dec. 7, 2000), fn. 2. An employer may not, however, have the same duties in the supervision of its independent contractors as it might in the supervision of its own employees, as an employer generally does not exert control over, or routinely supervise an independent contractor in the daily performance of its work. Yet, an employer's duty to supervise anyone under its employ, like any other duty, is dependent upon the specific facts and circumstances of the case.

{¶ 36} After reviewing the record, we find appellant presented evidence upon which reasonable minds could come to different conclusions as to appellee's knowledge of Hogeback's uncontrollable assaultive propensities and whether his conduct was to be anticipated such that appellees willingness to take the risk of such criminal acts were unreasonable. In reaching this conclusion, we are cognizant that criminal acts are nearly impossible to predict. However, the record in this case presents several questions of fact relating to appellees' knowledge of Hogeback's uncontrollable assaultive propensities such that appellant's claims for negligent hiring, supervision, and retention should have been submitted to the jury.

{¶ 37} In particular, appellant presented evidence of statements made by Spurlock after the assault, which, at the very least, created a question of fact as to her knowledge of Hogeback's propensity to use physical violence. Once the assault ended, Wengler testified he called Spurlock and told her "[Hogeback] came down here and we were working and [appellant] had stopped by and then all of the sudden they got in this frackus and [Hogeback] punched [appellant]." Wenger testified Spurlock responded by saying: "This is, oh, no, no, this has happened before. This isn't good." When Spurlock arrived on the scene, Hickey and Jackson testified Spurlock stated, "this has happened before," and "oh, no, not again." In addition, Hickey testified Spurlock apologized for Hogeback "showing up like that and * * * And she then talked about he had some serious issues with his anger and some self-control and then made a comment about him not being on his medication." Hickey further testified that a few days after the incident, Spurlock told him "Hogeback had been in trouble for assault and had been seeing a therapist about stuff and –related to that." Spurlock testified she did not recall the statements she made while at the scene. Spurlock also testified that the only medication she was aware Hogeback was taking was for his hip. The record is absent any explanation as to why Spurlock would bring up Hogeback's hip medication in

response to it being reported that Hogeback had just assaulted someone. Finally, Spurlock stated she only became aware of Hogeback's prior assault convictions after this incident.

{¶ 38} Based on this record, Spurlock's statement, "this has happened before," at the very least provided evidence, which when viewed in light most favorable to appellant, she was aware Hogeback previously initiated a similar assault. This is true especially in light of the fact that Spurlock's statement was made in response to Wengler's report that Hogeback had repetitively punched appellant. In addition, Spurlock and Hickey offered competing testimony as to whether Spurlock was aware that Hogeback had been in trouble for assault prior to his assault on appellant or whether she was aware he was on medication related to his anger issues. Accordingly, to determine Spurlock's knowledge of Hogeback's propensity to engage in uncontrollable assaultive behavior, one must weigh the evidence and determine the credibility of Hickey and Spurlock's testimony. Such a weighing of the evidence is not permitted in ruling on a motion for a directed verdict.

{¶ 39} In addition, the record is clear that Hickey complained to Spurlock on numerous occasions about Hogeback's "aggressive and rude behavior" at the worksite. Upon being faced with these complaints, Spurlock responded she would "talk" to Hogeback. This "rude and aggressive" behavior alone does not give rise to a finding that Hogeback would eventually resort to physical violence. However, the record suggests Hogeback's behavior was continuing in nature in the days prior to the incident and at the very least, that Spurlock was aware others were becoming "uncomfortable" with Hogeback being around. Furthermore, Spurlock's attempts to dissuade Hogeback from having confrontations with other laborers were not working.

{¶ 40} According to Hickey, a few days prior to the incident, he and Hogeback got into an argument regarding work on the driveway. Spurlock became aware of the incident, and spoke with Wengler. Wengler told Spurlock he worked for her and not Hogeback. Spurlock

told Wengler to "just come finish the job." As a result of this conversation, Spurlock instructed OLC Excavating to finish its work on the day of the incident because she knew Hogeback had to work at another job. It appears that in persuading Wengler to finish the job, Spurlock assured Wengler and Hickey that Hogeback would not be at the worksite that day. According to Spurlock, she knew they would be more "comfortable" if Hogeback was not there.

{¶ 41} Spurlock's response to Wengler and her further assurances that Hogeback would not be there the day of the incident, at the very least, gives rise to an inference that Spurlock was aware of the issues between Hogeback and the other laborers and anticipated possible misconduct on the part of Hogeback. Even given her awareness of the volatile relationship between Hogeback and Hickey, Spurlock testified she never told Hogeback not to go to the worksite on the day in question. Based on these facts, it was for the jury to decide whether Hogeback's misconduct was anticipated and whether Spurlock, and therefore, appellees took an unreasonable risk in failing to instruct Hogeback that he was not permitted to be at Presidio Pines that day.

{¶ 42} In construing the evidence in a light most favorable to appellant, as we must on a directed verdict, we find appellant presented sufficient evidence from which the jury could have found the existence of each of the essential elements of a negligent hiring, supervision, or retention claim. Accordingly, based on facts and circumstances of this case, a directed verdict on appellant's negligent hiring, supervision, and retention claims was inappropriate.

{¶ 43} Appellant's second assignment of error is sustained in part and overruled in part.

### III. CONCLUSION

{¶ 44} In light of the foregoing, to the extent the trial court's decision granted a directed verdict with respect to appellant's negligent hiring, supervision, and retention claims, the

- 16 -

judgment is reversed and the matter remanded for further proceedings on those claims. As to all remaining claims upon which appellees were granted a directed verdict, the judgment of the trial court is affirmed.

{¶ 45} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

HENDRICKSON, P.J., and M. POWELL, J., concur.