STATE FARM FIRE & CASUALTY COMPANY, Appellee,

v.

SCANDINAVIAN HEALTH SPA, INC., Appellant.

[Cite as *State Farm Fire & Cas. Co. v. Scandinavian Health Spa, Inc.* (1995), 104 Ohio App.3d 582.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940196.

Decided June 21, 1995.

584

*Immerman & Tobin Co., L.P.A.,* and *Stuart Tobin,* for appellee.

*Benesch, Friedlander, Coplan & Aronoff* and *Joseph P. Thomas,* for appellant.

MARIANNA BROWN BETTMAN, Judge.

This case arises from an incident which occurred on the premises of the defendant-appellant, Scandinavian Health Spa, Inc. ("Scandinavian" or "the club"). On December 8, 1990, Dave Parker, a former Cincinnati Reds baseball player and member of Scandinavian, went to the club to work out. Parker placed his wedding ring, valued at $46,947.50, in one of the lockers at the club, and secured it with a lock that he had brought. Upon returning to his locker after his workout, Parker discovered that the ring was missing. Parker reported the theft to Scandinavian and to the police. Parker's ring was insured by the plaintiff-appellee, State Farm Fire & Casualty Company ("State Farm"), and Parker was paid for his loss pursuant to his policy.

State Farm, as subrogee of Parker's claim,[1] subsequently sued Scandinavian, seeking to recover the money it had paid on Parker's policy. State Farm argued, in Parker's stead, that Scandinavian had been negligent in failing to keep its premises in a reasonably safe condition for its business invitees, and that this negligence was the proximate cause of the theft of Parker's ring. The case was tried before a jury, which found Scandinavian one-hundred-percent negligent and thus liable for the entire $46,947.50 loss. Scandinavian filed a timely appeal from the judgment entered upon the jury's verdict.

Scandinavian raises three assignments of error: (1) the trial court erred in denying Scandinavian's motions for summary judgment and a directed verdict; (2) the trial court erred in removing the issue of express assumption of the risk from the jury; and (3) the trial court erred in admitting police reports and testimony regarding prior incidents of theft at Scandinavian's health spa and testimony regarding the prior criminal records of the club's employees.

In its second assignment of error, which we will consider first, the club argues that the trial court erred in removing the issue of express assumption of the risk from the jury. Scandinavian argues that the contract term "property damage" included theft or loss, and that in signing the membership contract Parker therefore expressly assumed the risk of theft or loss and was precluded from recovery. In the alternative, Scandinavian argues that the question of whether "property damage" included "theft or loss" was for the jury. We disagree with both contentions.

Express assumption of risk is that category of assumption of risk which is contractual in nature and arises where a person expressly contracts with another not to sue for any future injuries which may be caused by that person's negligence. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. For express assumption of risk to operate as a bar to recovery, the party waiving his right to recover must make a conscious choice to accept the consequences of the other party's negligence. *Anderson, supra.* It follows that in order for a conscious acceptance to be made, an agreement purporting to constitute an express assumption of risk must state a clear and unambiguous intent to release the party from liability for its negligence. See *Tanker v. N. Crest Equestrian Ctr.* (1993), 86 Ohio App.3d 522, 621 N.E.2d 589; *Holmes v. Health & Tennis Corp. of Am.* (May 3, 1995), Hamilton App. No. C–940138, unreported, 1995 WL 256290.

The membership contract which Parker signed contained a paragraph which reads as follows:

---

1. Throughout this opinion Parker's actions are to be attributed to State Farm as subrogee.

"ACCIDENTS: It is further expressly agreed that all exercise and treatments and the use of all facilities shall be undertaken by the member at his own risk and that Scandinavian Health Spa shall not be liable for any bodily injury and or property damage resulting from the use of these facilities."

We agree with the trial court that this paragraph in the health club contract, on which Scandinavian relies, clearly does not cover theft. When a contract is unambiguous, its interpretation and enforceability are questions of law, not fact. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of syllabus; *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371. Therefore, Scandinavian was not entitled to have this issue submitted to the jury. Scandinavian's second assignment of error is overruled.

In its first assignment of error, Scandinavian argues that it was entitled to prevail in this case as a matter of law, either by way of summary judgment or a directed verdict. In support of this assignment, Scandinavian commingles several theories. The club argues that because Parker admitted that he knew of prior thefts at the club, he assumed any risk of loss. The club also argues that it had no duty to protect Parker from a risk of which he was already aware. Finally, the club argues that given Parker's actions in the face of his knowledge of prior thefts, any negligence on its part could not have been the proximate cause of his loss.

■ As indicated in the second assignment of error, the trial court correctly ruled that express assumption of risk had no application in this case. Furthermore, implied assumption of risk has merged with contributory negligence in Ohio law. *Anderson v. Ceccardi, supra,* paragraph one of syllabus. Therefore, evidence regarding a victim's assumption of the risk is properly considered by the jury in weighing the comparative negligence of the parties.

■ The allegations raised by Scandinavian in its first assignment of error undeniably created issues of comparative negligence. The record demonstrates that notwithstanding his admitted awareness of thefts from lockers at Scandinavian, and his awareness of at least one other theft of a wedding ring, Parker continued to put his wedding ring in his locker, raising issues of his own negligence and assumption of the risk. However, the record also demonstrates that Scandinavian had had a rash of thefts, including thefts from locked lockers, and had been given concrete suggestions from the local police department about corrective measures to increase security and decrease thefts, but did nothing whatsoever to correct this problem. This clearly raises an issue of negligence on the part of the club.

The court in this case correctly determined that Scandinavian had a duty, in light of its knowledge of prior thefts at the club, to make the premises secure. The trial court also correctly pointed out on numerous occasions to the parties that whether Scandinavian did enough in light of its knowledge was a question of fact to be determined by the jury, and that Parker's knowledge and actions were evidence to be considered by the jury in weighing the comparative negligence of Parker and Scandinavian. Summary judgment and a directed verdict were properly denied by the trial court.

While it is hard to imagine how, on the state of this record, one-hundred percent of the fault could be assessed against Scandinavian and zero percent against Parker, Scandinavian does not assign the weight of the evidence as error.[2] In light of our disposition of the third assignment of error, perhaps a different jury will see things differently. Scandinavian's first assignment of error is overruled.

We next address Scandinavian's third assignment of error, that the trial court erred in admitting police reports regarding prior incidents of theft at the club, and testimony regarding the prior criminal records of specific Scandinavian employees.

State Farm had the burden of proving that Scandinavian was negligent in this case. The evidence of prior incidents of theft at the club was directly relevant to the issue of the club's negligence. The police reports established that the club was on notice of a significant security problem, and therefore had a duty to warn its members and to take reasonable precautions with respect to locker-room security. Therefore, we hold that the introduction of the police reports into evidence was not error. We also note that the trial court properly gave several cautionary instructions about the purpose of these police reports.

We do not, however, see the testimony regarding the prior criminal records of Scandinavian employees in the same light. During trial, over the repeated objection of the club, State Farm elicited testimony from a police officer about the criminal records of at least two specifically named individuals who had been employed by Scandinavian at the time that the thefts occurred. The police officer gave extensive testimony about the records of these individuals, who had been hired by Scandinavian out of a halfway house. These individuals were repeatedly referred to as "thieves." State Farm was permitted to argue that Scandinavian had "hired thieves" and, by doing so, had negligently put "the fox in charge of the chicken coop."

---

2. The trial court recommended several times to counsel, outside the presence of the jury, that a settlement would be advisable because of the obvious negligence of Parker.

At no time was there any connection established between these employees' past crimes and the theft of Parker's ring or any other thefts from the club. At no time was either employee ever charged with the thefts, or implicated in any way. The individual eventually apprehended for some of the thefts that occurred at Scandinavian (although not the theft of Parker's ring, which was never recovered) was neither an employee nor a member of the club.

In an inquiry regarding the admissibility of evidence under the general standard of relevancy, the analysis is twofold: (1) whether the evidence is probative, and (2) whether the probative value of the evidence is outweighed by the danger of undue prejudice. Evid.R. 401 and 403.

After a careful consideration of the evidence in question, we conclude that the sole purpose for eliciting testimony regarding the prior criminal records of two employees at Scandinavian was to inflame the passions of the jury with the highly prejudicial effect of this evidence. State Farm failed to establish any connection between the employees and the thefts. Furthermore, the issues of notice and foreseeability were adequately addressed by introduction of the police reports discussed above.

We hold that the trial court abused its discretion in admitting evidence of the prior criminal records of employees of the club. We further hold that the admission of this evidence was prejudicial to Scandinavian, and that an impartial consideration by the jury of the issue of comparative negligence between Parker and Scandinavian was thereby foreclosed. We therefore sustain Scandinavian's third assignment of error with respect to the testimony regarding prior criminal records of employees of Scandinavian.

For the reasons given in response to the third assignment of error, the judgment entered upon the jury's verdict is reversed, and this case is remanded for a new trial solely on negligence and comparative negligence and in accordance with the mandates of this opinion.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., and HILDEBRANDT, J., concur.