[Cite as *Pruitt v. Strong Style Fitness*, 2011-Ohio-5272.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96332**

## ANTHONY PRUITT

PLAINTIFF-APPELLANT

vs.

## STRONG STYLE FITNESS, ETC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-717666

**BEFORE:** S. Gallagher, P.J., Keough, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 13, 2011

**ATTORNEYS FOR APPELLANT**

Michael D. Goldstein
Ladi Williams
Goldstein & Goldstein Co., L.P.A.
55 Public Square
Suite 1575
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

**For Strong Style Fitness**

Shawn W. Schlesinger
Koeth, Rice & Leo Co., LPA
1280 West Third Street
Cleveland, Ohio 44113

**For Magnum Fitness Systems**

Daniel R. Haude
Reminger Co., LPA
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115

SEAN C. GALLAGHER, P.J.:

{¶ 1} Appellant Anthony Pruitt appeals the decision of the trial court granting the motion for summary judgment filed by appellee Juggernaut Enterprises, LLC, d.b.a. Strong Style Fitness and Training Center ("Strong Style").   For the following reasons, we affirm the decision of the trial court.

**{¶ 2}** In January 2009, Pruitt joined Strong Style, paying for two months of gym membership and ten personal training sessions with Charles Lyons. Upon joining, Pruitt signed two documents, one for the general membership and another titled "Strong Style Rules and Regulations." The rules and regulations document contained an exculpatory clause on the first page of a two-page, double-sided document. An underlined clause in that document provides in pertinent part as follows:

> "**Release. * * * On behalf of yourself and your minor children, you hereby agree to voluntarily release and discharge Strong Style Fitness and Training Center (and all its affiliates, employees, representatives, agents, successors, and assigns) from any and all claims, causes of action, and other liabilities of any kind whatsoever ([sic] whether known or unknown, which may occur as a result of your or your minor children engaging in any bodybuilding or fitness activity, or any activity incidental thereto, upon or within the Facilities, whether arising from the negligence of Strong Style Fitness and Training Center or otherwise, and whether or not related to exercise, including, without limitation, any bodily injury or death caused by any present or future medical condition of yours or your minor children whether known or unknown. * * * You acknowledge that you carefully read this Waiver and Release and fully understand that it is a release of liability. You are waiving any right that you may have to bring a legal action to assert a claim against Strong Style Fitness and Training Center for our negligence.**"

**{¶ 3}** Immediately preceding the signature line containing Pruitt's signature, the document contains a paragraph certifying that Pruitt read and understood the terms of the rules and regulations.

**{¶ 4}** Pruitt participated in four personal training sessions prior to the ill-fated session. During this fifth session, Pruitt was using the incline leg press machine under Lyons's supervision. The machine required Pruitt to sit at a 45-degree angle with his legs extending upwards. The weights were hung on a 90-pound platform that Pruitt pushed with his legs.

Lyons showed Pruitt how to operate the machine and the safety catch that holds the platform in place. To use the machine, the user extends his legs and disengages the safety catch. Before finishing, the user holds the platform with his legs, engages the safety catch, and lowers the platform onto the safety catch.

{¶ 5} During the fifth session, Pruitt pressed 350 pounds. After finishing his sets, Pruitt engaged the safety catch and rested momentarily. Pruitt was unable to visually verify whether the catch was fully engaged from his seated position. Likewise, Lyons, who was standing next to the weight platform to "spot" Pruitt, was unable to visually verify whether the safety catch was fully engaged. Lyons heard the catch engage as if it was properly activated. Pruitt then attempted to exit the machine by grabbing the foot platform. Inexplicably, the platform disengaged from the safety catch and fell on Pruitt's knee, causing severe injuries. The parties speculated that either the safety catch was not fully engaged or Pruitt somehow lifted the platform enough to raise it off the safety catch as he was getting up, which would cause the catch to disengage. Both theories are based on conjecture. Pruitt's claims are based on Lyons's failure to ensure the machine was secured prior to Pruitt's attempt to exit the machine.

{¶ 6} Strong Style filed a motion for summary judgment. The trial court granted its motion and held that Pruitt failed to demonstrate that Strong Style, through Lyons, was negligent and that the release contained in the rules and regulations document was enforceable, thereby prohibiting Pruitt from maintaining his action. Pruitt timely appealed, raising one assignment of error that provides as follows: "The trial court erred

in granting defendant-appellee's motion for summary judgment because the release language within Strong Style gym's membership agreement was unenforceable as a matter of law and plaintiff-appellant presented sufficient evidence for jury consideration of his negligence claim." The crux of Pruitt's argument is that the exculpatory clause is unenforceable because it is unconscionable, ambiguous, or against public policy. For the following reasons, Pruitt's sole assignment of error is without merit.

{¶ 7} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12. Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc*. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.

{¶ 8} Generally in Ohio, exculpatory clauses, which relieve a party from its own negligence, are not against public policy despite being disfavored in the law. *Lamb v.*

*Univ. Hosp. Health Care Ent., Inc.* (Aug. 13, 1998), Cuyahoga App. No. 73144. Valid exculpatory clauses or releases constitute express assumptions of risk. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 451 N.E.2d 780. As with contracts in general, these clauses are to be strictly construed against the drafter unless the language is clear and unambiguous. When the terms of the contract are clear and unambiguous, the interpretation is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 374 N.E.2d 146.

{¶ 9} A party waiving his right to recover for another's negligent acts must make a conscious choice to accept the consequences of the other party's negligence. *Lamb*, Cuyahoga App. No. 73144, citing *Cain v. Cleveland Parachute Training Ctr.* (1983), 9 Ohio App.3d 27, 28, 457 N.E.2d 1185. If the terms of the contract are ambiguous, the intention of the parties is a factual inquiry for the trier of fact. Id. Recovery for willful or wanton misconduct cannot be waived. Id.

{¶ 10} Moreover, as with all contracts, the party against whom the contract is being enforced may seek rescission of the contract if the terms are unconscionable. "Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." (Internal citations and quotations omitted.) *Short v. Resource Title Agency, Inc.*, Cuyahoga App. No. 95839, 2011-Ohio-1577, ¶ 21. Whether a clause is unconscionable is a question of law. Id. The party challenging the

enforceability of the contract has the burden to establish both procedural and substantive unconscionability.  Id at ¶ 22.

> **"Substantive unconscionability involves those factors which relate to the contract terms themselves, and whether they are commercially reasonable.  Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties. These factors may include age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, and whether the terms were explained to the weaker party."**

(Internal citations and quotations omitted.)  Id. at ¶ 23.

{¶ 11} Pruitt raises several arguments attacking the validity of the exculpatory clause.  He argues that the agreement is ambiguous, inconspicious, against public policy, and unconscionable.

{¶ 12} Although Pruitt claims the release is against public policy, Ohio courts have consistently held to the contrary.  See *Lamb*, Cuyahoga App. No. 73144. "Additionally, we note that, although an exculpatory clause to limit one's liability due to negligence may be valid and enforceable, Ohio law finds that such a clause is ineffective where the party seeking protection failed to exercise any care whatsoever, where there was willful or wanton misconduct, or where the clause is against important public policy concerns, unconscionable, or vague and ambiguous." *Ohio Cas. Ins. Co. v. D & J Distrib. & Mfg. Inc.*, Lucas App. No. L-08-1104, 2009-Ohio-3806, ¶ 36.  Pruitt's sole claim advanced is one for negligence; therefore, our review is limited to whether the exculpatory clause is unconscionable, vague, or ambiguous.

{¶ 13} Pruitt first argues that the exculpatory clause is unconscionable because the parties were of unequal bargaining power, Pruitt had no opportunity to bargain for or negotiate the terms of the release, and no representative from Strong Style explained the terms of the clause. Pruitt relies on *Hartford Fire Ins. Co. v. Siefert*, Cuyahoga App. No. 93291, 2010-Ohio-2346, for the proposition of law that a release is unenforceable if the party against whom the enforcement is sought has unequal bargaining power or has not been provided the opportunity for nonexculpatory contract options that could be purchased for greater consideration. Pruitt's reliance is misplaced.

{¶ 14} In *Siefert*, the defendant rented a skid steer, a piece of heavy equipment. The defendant wrecked the engine on the skid steer, and the insurance company asserted its subrogation right against him. The defendant claimed that the rental company was negligent in failing to ensure that he was an acceptable operator of the machine and to properly demonstrate safe handling techniques. This court, albeit after finding that the release was unenforceable, found that the defendant failed to demonstrate that the rental company was negligent. This alone distinguishes *Siefert* from the facts of this case. Whether the contract in *Siefert* was enforceable was moot because of the lack of negligence. However, in deciding that the release was not enforceable, this court relied on *Orlett v. Suburban Propane* (1989), 54 Ohio App.3d 127, 561 N.E.2d 1066, which cites *Motorists Mut. Ins. Co. v. Jones* (1966), 9 Ohio Misc. 113, 223 N.E.2d 381.

{¶ 15} The *Motorists* court teaches that "[g]enerally, a contractual provision which exempts a party from liability for his negligence will be enforced when: [(1)] [t]he

contracting parties stand in roughly equal bargaining positions, or [(2)] [w]hen the positions are somewhat unequal but the inferior party is given an option of excluding the exemption for additional consideration." Id. at 115. In other words, the analysis advanced in *Motorists* determined under what conditions a release of liability would be enforced. *Motorists* does not stand for the proposition that both of the conditions must be met to have an enforceable exculpatory provision. Thus, the negation of either of the two above conditions does not necessarily void the release provision of the contract.

{¶ 16} For that determination, we rely on the doctrine of unconscionability. In order to rescind an unconscionable contract, the party seeking rescission must show both procedural and substantive unconscionability. *Short*, 2011-Ohio-1577, ¶ 21. Simply relying on the unequal bargaining position of the parties, part of the procedural unconscionability analysis, is insufficient. Id.

{¶ 17} Pruitt simply argues that Strong Style drafted the contract and had unequal bargaining power. The facts of this case do not support his argument. Pruitt served in the military, attended college, and was employed. Moreover, even though he argues that he did not understand the terms of the release, Pruitt claims to have not read the terms because the release was "buried within the small print of a separate document."

{¶ 18} In reviewing the exculpatory clause, we agree with the trial court that the terms and conditions are clearly set forth. The release is on the front page of a double-sided document, and the entire clause is underlined to ensure it stood out from the rest of the non-underlined text. The last sentence specifically notifies Pruitt that he is

waiving any claim for negligence against Strong Style. Finally, immediately preceding Pruitt's signature is a paragraph in bold type stating that Pruitt read and understood the terms of the rules and regulations prior to signing. At that point, Pruitt was free to walk away from the contract if he did not like the terms proposed by Strong Style. See *Wallace v. Ganley Auto Group*, Cuyahoga App. No. 95081, 2011-Ohio-2909 (finding no merit to the argument that an arbitration provision is unconscionable when the terms are clearly laid out for the parties and the contract contained a clause that the signor read and understood the terms of the contract). We accordingly find that Pruitt has not met his burden to show that the release is procedurally unconscionable, much less procedurally and substantively unconscionable.[1]

{¶ 19} Finally, the terms of the release are clear and unambiguous. The release provides the following: "You acknowledge that you carefully read this Waiver and Release and fully understand that it is a release of liability. You are waiving any right that you may have to bring a legal action to assert a claim against Strong Style Fitness and Training Center for our negligence."

{¶ 20} The terms of the contract are clear.[2] Pruitt released Strong Style and its employees, representatives, and agents from all claims of negligence, and the contract

---

[1] We note, although not argued, that properly drafted releases from liability within fitness club contracts have been deemed to not be unconscionable. See *Lamb*, Cuyahoga App. No. 73144 (finding that exculpatory clauses in fitness club contracts are not unconscionable). Such a finding necessarily means that those releases are substantively conscionable and therefore commercially reasonable.

[2] Pruitt's reliance on *Holmes v. Health & Tennis Corp. of Am.* (1995), 103 Ohio App.3d

further informed him that he relinquished some of his legal rights. Pruitt claims that the release clause is silent as to personal trainers. However, the clause he referenced provides that all personal training "shall be conducted solely by [Strong Style] and its staff." It is therefore undisputed that Lyons, as a personal trainer, was employed by Strong Style, and the terms of the release relieve Strong Style and Lyons of liability for Lyons's negligent actions. Pruitt's sole assignment of error is overruled.

{¶ 21} Because the release provision of the agreement is enforceable, we need not determine whether Pruitt established a prima facie claim of negligence. Even if he did, the release prohibits recovery.

{¶ 22} Pruitt released Strong Style from liability for any negligent act. The facts of this case are unfortunate, but the trial court did not err by granting summary judgment in favor of Strong Style based on the release. The terms of the agreement were not inconspicious, unconscionable, ambiguous, or against public policy. There being no genuine issue of material fact, Strong Style was entitled to judgment as a matter of law. It appears from the undisputed evidence, construed most strongly in Pruitt's favor, that reasonable minds can come to but one conclusion adverse to Pruitt. The terms of the

---

364, 659 N.E.2d 812, to establish an ambiguity is misplaced. The agreement in *Holmes* involved an express assumption of the risk that provided: "Use of our facilities is at your own risk, and we shall not be liable for any injury or damages resulting from your use of our services and facilities." The *Holmes* court determined that such language was ambiguous with respect to the parties' intent to waive future claims of negligence. This is distinguishable from the current case. The clause in question specifically notifies Pruitt that he is waiving all future claims of negligence.

agreement prohibited Pruitt from advancing a claim of negligence against Strong Style. There being no other claims in the complaint, the trial court's decision is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR