[Cite as *Goss v. USA Cycling, Inc.*, 2022-Ohio-2500.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HEATHER GOSS,                                        :

    Plaintiff-Appellant,              :

                                               No. 111084

    v.                                                :

USA CYCLING, INC., ET AL.,                       :

    Defendants-Appellees.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 21, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931632

---

## *Appearances:*

Barkan Meizlish DeRose Cox, LLP, Sanford A. Meizlish, and Jason C. Cox, *for appellant*.

Marshall Dennehey Warner Coleman & Goggin, David J. Fagnilli, and Jillian L. Dinehart, *for appellee* USA Cycling, Inc.

Ogletree Deakins, Nash, Smoak & Stewart, P.C., John Gerak, and Amanda T. Quan, *for appellee* Case Western Reserve University.

Gallagher Sharp LLP, and Joseph Monroe, II, *for appellee* Greater Cleveland Sports Commission.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, Heather Goss ("Goss"), appeals from the trial court's judgment granting summary judgment in favor of defendant-appellees, USA Cycling, Inc. ("USAC"), Case Western Reserve University ("CWRU"), and Greater Cleveland Sports Commission (the "GCSC") (collectively the "appellees"). Goss raises the following assignments of error for review:

> 1. The trial court erred in finding that negligence as to racecourse safety and design was within the contemplation of the appellant and the appellees when the event release was executed.
>
> 2. The trial court erred by failing to address and adopt appellant's argument that Ohio should void broad, nonspecific, ambiguous waivers of liability as a matter of public policy.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} In 2016, the GCSC organized NEOCycle, a multi-day cycling festival featuring criterium races, where cyclists race numerous laps around a closed-loop race. The GCSC partnered with CWRU Cycling, a student-led cycling club, to organize the criterium races sanctioned by USAC.

{¶ 4} Individuals involved in the logistical organization of the event included GCSC's operation manager, Matthew Sajna ("Sajna"); CWRU staff-advisor, Ryan Pierce ("Pierce"); and CWRU students, Henry Bermet ("Bermet"), Jasper Stallings ("Stallings"), and Matthew Swartout ("Swartout"). With the exception of Swartout, the event organizers had minimal experience in designing criterium-race courses.

(Pierce depo. at 46-48; Stallings depo. at 23-25, 43; Bermet depo. at 13, 21-22; Swartout depo. at 23-24.) More significantly, the event organizers did not receive specialized training in criterium-race course safety or design prior to the 2016 event. *Id.* Despite their lack of training, however, members of the CWRU Cycling club were directly involved in the design of the race course and the measures taken to ensure safe racing conditions.

{¶ 5} As part of the registration process for the NEOCycle event, Goss executed a release form titled, "2016 USA Cycling Event Release Form AND One Day License Application" (the "Event Release"). The Event Release provided, in pertinent part:

> I acknowledge that by signing this document, I am assuming risks, agreeing to indemnify, not to sue and release from liability the organizer of this event, USA Cycling, Inc. * * * and their respective agents, insurers, employees, volunteers, members, clubs, officials, sponsors, event directors, local associations, and affiliates (collectively "Releasees"), and that I am giving up substantial legal rights. This release is a contract with legal and binding consequences and it applies to all races and activities entered at the event, regardless whether or not listed above. I have read it carefully before signing and I understand what it means and what I am agreeing to by signing.
>
> I ACKNOWLEDGE THAT CYCLING IS AN INHERENTLY DANGEROUS SPORT AND FULLY REALIZE THE DANGERS OF PARTICIPATING IN THIS EVENT * * * and FULLY ASSUME THE RISKS ASSOCIATED WITH SUCH PARTICIPATION INCLUDING, by way of example, and not limitation: * * * the dangers of collision with pedestrians, vehicles, or other riders, and fixed and moving objects; the dangers arising from surface hazards, including pot holes, equipment failure, inadequate safety equipment, * * * THE RELEASEES' OWN NEGLIGENCE, the negligence of others and weather conditions; and the possibility of serious physical and/or mental trauma or injury, or death associated with the event.

> \* \* \* I HEARBY WAIVE, RELEASE, DISCHARGE, HOLD HARMLESS, AND PROMISE TO INDEMNIDY AND NOT SUE the Releasees \* \* \* FROM ANY AND ALL RIGHTS AND CLAIMS INCLUDING CLAIMS ARISING FROM THE RELEASEES' OWN NEGLIGENCE TO THE MAXIMUM EXTENT PERMITTED BY LAW, which I have or may hereafter accrue to me, and from any and all damages which may be sustained by me directly or indirectly in connection with, or arising out of, my participation in or association with the event[.]
>
> \* \* \*
>
> I agree, for myself and my successors, that the above representations are contractually binding, and are not mere recitals, and that should I or my successors assert a claim contrary to what I have agreed to in this contract, the claiming party shall be liable for the expenses (including legal fees) incurred by the Releasees in defending the claims.

(Emphasis sic.) Goss had previously executed an agreement with USAC on April 14, 2016, in order to obtain a license from USAC to participate in USAC-sanctioned events in 2016. This agreement, titled "Acknowledgment of Risk, Release of Liability, Indemnification Agreement and Covenant Not to Sue" (the "Licensing Release"), contained substantially similar language to that set forth in the Event Release.

{¶ 6} On September 10, 2016, Goss participated in two separate criterium races at the NEOCycle event. In the morning event, Goss completed a 30-minute ride. Later that afternoon, Goss returned to the same course to participate in her second race. On the final lap of the second race, a cyclist in front of Goss unexpectedly fell on the final turn of the race. The crash caused many cyclists, including Goss, to lose control of their bicycles. Ultimately, Goss crashed into a barrier, causing injuries to her neck, thyroid, larynx, and trachea. (Goss depo. 117-118.)

{¶ 7} On April 2, 2020, Goss filed a civil complaint against the appellees, setting forth separate causes of action for negligence.  In pertinent part, Goss alleged that USAC, CWRU, and GCSC each breached their duty to "exercise ordinary and reasonable care for the safety of [Goss]; to maintain said race course in a reasonably safe condition; to give warning of latent or concealed perils thereon, of which [they] knew or should have known; and not to expose such persons to unreasonable or foreseeable risk of severe bodily harm and injury."  Regarding the course conditions that allegedly led to Goss's injuries, Goss asserted that "the race course design did not conform to USAC's own safety standards, insomuch as there was insufficient distance from the race course's final corner to the finish area.  This insufficient distance caused racers to begin their 'final sprint' to the finish line before the final turn, thereby greatly increasing the chance for slide-outs and collisions."

{¶ 8} On July 23, 2021, USAC filed a motion for summary judgment, arguing that Goss released USAC from negligence claims relating to her injuries sustained during the NEOCycle criterium race by executing two valid and binding waivers of liability.  USAC asserted that the Event Release and the Licensing Release were each "clear and unambiguous as to the type of liability being released (i.e. negligence claims) and the persons being released (i.e. event organizers)."  Alternatively, USAC argued that even if Goss had not expressly assumed the risks associated with the sporting event, the common-law doctrine of primary assumption of the risk required Goss's claim to fail.  In support of its motion for summary judgment, USAC attached

copies of the Event Release and the Licensing Release, as well as deposition excerpts from Sajna, Stallings, Pierce, and Goss.

{¶ 9} On the same day, CWRU and GCSC filed a joint motion for summary judgment, arguing that "Goss's negligence claims are barred as a matter of law because Goss signed a valid release waiving all claims, including negligence claims, against CWRU and GCSC." In support of their joint motion for summary judgment, CWRU and GCSC attached copies of the Event Release and Licensing Release, as well as the deposition testimony of Sajna, Pierce, Stallings, Bermet, and Goss.

{¶ 10} On August 2021, Goss filed a brief in opposition to summary judgment, arguing that because the language set forth in the Event Release was "so general and ambiguous, reasonable minds could conclude that negligence as to the race course safety and design was not within the contemplation of the [parties] when the Event Release was executed." Goss asserted that at the time she signed the Event Release she "could not have comprehended the student planners' lack of training and experience in race-course safety," or that "the actual race-course safety would be so far beneath USAC's safety standards." Alternatively, Goss argued that the broad waiver of liability should be deemed void as a matter of public policy.

{¶ 11} In support of her brief in opposition, Goss attached a copy of the Event Release, as well as deposition excerpts from Sajna, Pierce, Goss, Bermet, Stallings, and Swartout. In addition, Goss attached a copy of the affidavit and report submitted by plaintiff's expert, Douglas Shapiro ("Shapiro"). Relevant to this appeal, Shapiro opined as follows:

Based on my 40 plus years of cycling experience, both as a bike racer, recreational cyclist and bicycle safety expert, it is my opinion the defendants' conduct was below the acceptable standard of care required for safe race-course design and rider safety resulting in dangerous conditions not commonly associated with ordinary risks involved in the sport of cycling. The deviations from the standard of care were the proximate cause of Ms. Goss's crash and injuries.

(Plaintiff's exhibit G, ¶ 16.)

{¶ 12} On November 18, 2021, the trial court granted summary judgment in favor of the appellees, stating, in pertinent part:

The court finds that Plaintiff executed a valid and binding pre-injury waiver, releasing defendant[s] of liability. Summary judgment is therefore entered in favor of defendant[s] and against Plaintiff.

{¶ 13} Goss now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Negligence Safety and Design

{¶ 14} In the first assignment of error, Goss argues the trial court erred in finding that negligence as to race course safety and design was within the contemplation of the parties at the time the event release was executed. Consistent with the arguments posed before the trial court, Goss contends the Event Release was "too ambiguous or general to effectively waive the negligent conduct of the appellees."

### 1. Standard of Review

{¶ 15} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d

241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998).

{¶ 16} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 17} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

## 2. Negligence

{¶ 18} To establish a negligence claim, the plaintiff must demonstrate a duty owed by the defendant to the plaintiff, a breach of that duty, and that the plaintiff's

injury proximately resulted from the defendant's breach of duty. *Everett v. Parma Hts.*, 8th Dist. Cuyahoga No. 99611, 2013-Ohio-5314, ¶ 15.

{¶ 19} It is well-established that Ohio law recognizes three types of assumption of risk as defenses to negligence: express, primary, and implied or secondary. *Cameron v. Univ. of Toledo*, 2018-Ohio-979, 98 N.E.3d 305, ¶ 41 (10th Dist.), citing *Schnetz v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 207, 2011-Ohio-3927, 959 N.E.2d 554, ¶ 21 (10th Dist.), citing *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 2009-Ohio-6898, 924 N.E.2d 906, ¶ 10 (10th Dist.). Pertinent to this case, express assumption of the risk is applicable when the parties expressly agree to release liability. *Crace* at ¶ 11, citing *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. Franklin No. 07AP-696, 2008-Ohio-1421, ¶ 6.

{¶ 20} "For express assumption of risk to operate as a bar to recovery, the party waiving his right to recover must make a conscious choice to accept the consequences of the other party's negligence." *State Farm Fire & Cas. Co. v. Scandinavian Health Spa, Inc.,* 104 Ohio App.3d 582, 586, 662 N.E.2d 890 (1st Dist.1995), citing *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 114, 451 N.E.2d 780 (1983). "It follows that in order for a conscious acceptance to be made, an agreement purporting to constitute an express assumption of risk must state a clear and unambiguous intent to release the party from liability for its negligence." *Holmes v. Health & Tennis Corp. of Am.*, 103 Ohio App.3d 364, 367, 659 N.E.2d 812 (1st Dist.1995), citing *Tanker v. N. Crest Equestrian Ctr.*, 86 Ohio App.3d 522, 621 N.E.2d 589 (9th Dist.1993).

{¶ 21} "Releases from liability for future tortious conduct are generally not favored by the law and are narrowly construed." *Reo v. Allegiance Admrs. L.L.C.*, 11th Dist. Lake No. 2017-L-112, 2018-Ohio-2464, ¶ 20, quoting *Brown-Spurgeon v. Paul Davis Sys. of Tri-State Area, Inc.*, 12th Dist. Clermont No. CA2012-09-069, 2013-Ohio-1845, ¶ 50, citing *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 46-47, 505 N.E.2d 264 (1987).

{¶ 22} Nonetheless, "courts routinely apply such releases to bar future tort liability as long as the intent of the parties, with regard to exactly what kind of liability and what persons and/or entities are being released, is stated in clear and unambiguous terms." *Brown-Spurgeon* at ¶ 51; *see also Glaspell* at ¶ 46-47 (A negligence claim is barred by the plaintiff's valid execution of a release of liability of future tortious conduct.); *Anderson* at 114 (Valid exculpatory clauses or releases constitute express assumptions of risk.); *Lamb v. University Hosp. Health Care Ents., Inc.*, 8th Dist. Cuyahoga No. 73144, 1998 Ohio App. LEXIS 3740 (Aug. 13, 1998) (clause including word "release" and "negligence" as well as specifically identifying persons released from liability sufficiently clear to release fitness club from liability for injuries); *Swartzentruber v. Wee-K Corp.*, 117 Ohio App.3d 420, 424-427, 690 N.E.2d 941 (4th Dist.1997) (language releasing livery stable from "any and all claims" that arose out of "any and all personal injuries" was sufficiently clear and specific to bar injured horseback rider's negligence claims).

{¶ 23} On the other hand, where the language of the release is ambiguous or too general, courts have held that the intent of the parties is a factual matter for the

jury. *Hague v. Summit Acres Skilled Nursing & Rehab.*, 7th Dist. Noble No. 09 NO 364, 2010-Ohio-6404, ¶ 21. "The pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved from liability for its own negligence." *Id*. at ¶ 22.

{¶ 24} When a writing is clear and unambiguous, the interpretation is a question of law. *Pruitt v. Strong Style Fitness*, 8th Dist. Cuyahoga No. 96332, 2011-Ohio-5272, ¶ 8, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16. Moreover, we must read the clauses as a whole, not piecemeal. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172, 436 N.E.2d 1347 (1982).

{¶ 25} In interpreting contracts, "[c]ourts must give common words their ordinary meaning unless manifest absurdity would result or some other meaning is clearly evidenced from the face or overall contents of the written instrument." *JP Morgan Chase Bank, Natl. Assn. v. Heckler*, 3d Dist. Union No. 14-12-26, 2013-Ohio-2388, ¶ 20, citing *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 29. And, although not always explicitly referenced or relied on, the rules of grammar are elemental whenever reading and understanding any writing, especially a contract. *See Gahanna v. Ohio Mun. Joint Self-Ins. Pool*, 10th Dist. Franklin No. 20AP-265, 2021-Ohio-445, ¶ 12 ("The court

must read words and phrases in context and apply the rules of grammar and common usage.").

{¶ 26} On appeal, Goss reiterates her position that the Event Release was "too ambiguous or general to effectively waive the negligent conduct of the appellees" because it did not expressly notify her that (1) "the race planners were students with no training, knowledge or experience in race course design and safety"; or (2) that "the student planners would ignore the recommendations of [USAC]." Thus, Goss contends that "because of the lack of any specificity regarding [the term] negligence in the Event Release," "the lower court erred when it failed to find that reasonable minds could differ as to whether the unsafe design of the racecourse by uneducated, untrained and inexperienced students was within the contemplation of the parties * * * at the time of the execution of the Event Release."

{¶ 27} In support of her position that the Event Release was so general that it included claims that were not within the contemplation of the parties when it was executed, Goss relies on the Twelfth District's decision in *Brown-Spurgeon*, 12th Dist. Clermont No. CA2012-09-069, 2013-Ohio-1845, and the Seventh District's decision in *Hague*, 7th Dist. Noble No. 09 NO 364, 2010-Ohio-6404.

{¶ 28} In *Brown-Spurgeon*, plaintiffs Kristina Brown-Spurgeon and Andrew Spurgeon hired defendant Paul Davis Systems of Tri-State Area, Inc. ("PDS") to complete home repairs after their home was flooded in May 2010. At the time PDS was hired, Kristina signed a "Work Authorization" form that contained an exculpatory clause. The form provided that PDS would not be liable for theft and

damages arising out of the services performed pursuant to the contract. However, the clause did allow liability for actions that arise out of the PDS's sole negligence.

{¶ 29} Once the repair-contract was executed, PDS hired Phil Griffin, the owner of Renovated Solutions, to perform a portion of the remodeling and restoration work. PDS and Griffin signed a "Tradesperson Agreement," which provided that Griffin would conduct background checks on all persons working on jobs obtained through PDS. Despite these safeguards, however, it was discovered that a repairman hired by Griffin stole prescription drugs, jewelry, electronics, and other personal property from the plaintiffs' home during the repair process. The value of the stolen items exceeded $18,000.

{¶ 30} In May 2011, the plaintiffs filed a lawsuit against PDS and Griffin, setting forth causes of action for vicarious liability, general negligence, and negligent hiring and supervision. Subsequently, the trial court granted summary judgment in favor of PDS and Griffin on each claim.

{¶ 31} On appeal, the Twelfth District reversed the trial court's judgment in part, finding that there remained genuine issues of material fact as to the plaintiffs' vicarious liability and general negligence claims against PDS, and the general negligence and negligent hiring and supervision claims against Griffin. Relevant to this appeal, the court determined that the exculpatory clause contained in the "Work Authorization" form did not exempt PDS from liability because (1) the theft involved "willful or wanton" conduct, and (2) the exculpatory clause expressly contained an exception for damages that arise directly from the "contractor's sole negligence."

*Brown-Spurgeon*, 12th Dist. Clermont No. CA2012-09-069, 2013-Ohio-1845, at ¶ 54-55.

**{¶ 32}** In *Hague*, plaintiffs Ruth and Robert Hague filed a negligence and loss of consortium action against Summit Acres and Summit Acres Skilled Nursing & Rehabilitation after Ruth was injured on a treadmill at Summit Acres' fitness center. Ultimately, the trial court granted summary judgment in favor of the defendants, finding the negligence claim must be dismissed as a matter of law because Ruth executed a release from liability form. The release provided, in relevant part:

> I agree that by using the fitness center, I am responsible for my actions. I agree that summit acres, inc. Is [sic] not liable for any injuries that I might receive by my use of the fitness center. I have checked with my doctor about the exercise program I am commencing upon.

**{¶ 33}** On appeal, the Seventh District concluded that the trial court erred in entering summary judgment in favor of Summit Acres based solely on the release. The court explained as follows:

> Here, the release signed by Ruth does not contain the words, "release" or "negligence," and does not identify the individuals, company or corporation being released from liability. The release simply states that Summit Acres is not liable for any injuries that Goss might receive "by [her] use of the fitness center." "For express assumption of risk to operate as a bar to recovery, the party waiving his right to recover must make a conscious choice to accept the consequences of the other party's negligence." [*Holmes,* 103 Ohio App.3d 364, at 367, 659 N.E.2d 812]. Hence, the release in this case is of the type that have been characterized by Ohio courts as too ambiguous and general.

*Id*. at ¶ 28.

{¶ 34} After careful consideration, we find *Brown-Spurgeon* and *Hague* to be factually distinguishable from this case. Significantly, unlike the circumstances presented in *Brown-Spurgeon*, Goss does not contend that "appellees engaged in willful or wanton conduct." Moreover, the Event Release executed in this case did not include an exception that would permit Goss to pursue a claim for damages arising from the appellees' sole negligence. To the contrary, the Event Release directly contemplates the appellees' own negligence and required Goss to acknowledge that she agreed "to waive, release, discharge, hold harmless, and promise to indemnify and not to sue" the appellees for damages arising from said negligence.

{¶ 35} Similarly, unlike the circumstances presented in *Hague*, the Event Release contained the words "release" and "negligence"; and is sufficiently clear and unambiguous as to both the type of liability being released (negligence) and the persons being released (event organizers). Here, Goss released the event sponsors and organizers from all claims arising from their own negligence to the maximum extent permitted by law, including any and all damages that may be sustained by Goss directly or indirectly in connection with, or arising out of, her participation in the cycling event. In this regard, the contract expressly stated that the release applied to "all races and activities entered at the event," and further required Goss to acknowledge that "cycling is an inherently dangerous sport." By signing the Event Release, Goss made the conscious choice to accept that she "fully assume[d] the risks associated with such participation," including (1) the dangers of collisions with other

riders; (2) the dangers arising from surface hazards, equipment failure, inadequate safety equipment, or the releasees' own negligence; and (3) the possibility of a serious physical injury. Considering these terms collectively and in light of what an ordinary prudent person would understand, it is clear that the appellees were to be relieved from liability for any negligence claims relating to their organization of the cycling event, including pertinent hazards and the design of the racecourse.

{¶ 36} Construing the evidence most strongly in Goss's favor, we find reasonable minds can come to but one conclusion and that conclusion is adverse to Goss. Under the doctrine of express assumption of risk, the terms of the Event Release prohibited Goss from advancing claims of negligence against the appellees. Accordingly, summary judgment in favor of the appellees was warranted as a matter of law.[1]

{¶ 37} Goss's first assignment of error is overruled.

### B. Public Policy Concerns

{¶ 38} In the second assignment of error, Goss argues the trial court erred by failing to adopt her argument that Ohio should void broad, nonspecific, ambiguous

---

[1] Although not specifically considered in the state of Ohio, the language contained in the Event Release generated by USAC has been considered nationally and found to be an adequate and enforceable release of liability where such releases are permissible. *See Scott v. Altoona Bicycle Club*, No. 1426 C.D.2009 (Pa. July 16, 2010) (finding USAC's event release is clear and unambiguous and released claims of negligence against event organizers and affirming the grant of summary judgment); *Hellweg v. Special Events Mgmt.*, 2011 IL App (1st) 103604, 956 N.E.2d 954, 958, 353 Ill. Dec. 826 (Ill.App.Ct. 2011) ("This agreement unambiguously absolves defendants of all claims arising out of the event even if caused by their own negligence."); *Milne v. USA Cycling, Inc.*, 489 F.Supp.2d 1283, 1287 (D.Utah 2007) ("The Court finds the release to show a clear and unequivocal expression of an intent to release.").

waivers of liability as a matter of public policy. Goss contends that by allowing a premises owner or occupier to obtain broad waivers of their own liability, an important incentive for the premises owners to maintain their premises in a reasonably safe condition would be removed, "thus forcing the public to bear the cost of resulting injuries caused by the [owner or occupier's] own negligence."

{¶ 39} Generally, in Ohio, exculpatory clauses, which relieve a party from its own negligence, are not against public policy despite being disfavored in the law. *Papenfuse v. Toledo Area Regional Transit Auth.*, 6th Dist. Lucas No. L-14-1178, 2015-Ohio-3193, ¶ 6. Thus, "limiting or exculpatory language in a contract will be enforced unless the language is against important public policy concerns, unconscionable, or vague and ambiguous." *Morantz v. Ortiz*, 10th Dist. Franklin No. 07AP-597, 2008-Ohio-1046, ¶ 27.

{¶ 40} On this record, we are unable to conclude that the Event Release is void and unenforceable due to an overwhelming public policy concern. On appeal, Goss does not contend that the Event Release was procedurally or substantively unconscionable. Moreover, as previously discussed, the Event Release was neither vague nor ambiguous. Finally, while this court agrees that the duties owed by premises owners are supported by legitimate interests in protecting the public from the risk of injury, it is equally true that the concept of freedom to contract is fundamental to our society. *See Hunter v. BPS Guard Servs.*, 100 Ohio App.3d 532, 552. Similarly, there are significant public policy interests in the promotion and organization of recreational activities on public lands. In this case, the exculpatory

clause released the event organizers from liability for negligence claims arising from the cycling event. However, the Event Release did not authorize the appellees to exercise no care whatsoever. Nor did it permit the appellees to engage in willful or wanton misconduct. Given these remaining, meaningful protections afforded to the public, we find no basis to adopt a position that would effectively overturn the well-established position of this court that "a participant in a recreational activity is free to contract with the proprietor of such activity as to relieve the proprietor of responsibility for damages or injuries to the participant caused by the negligence of the proprietor except when caused by wanton or wilful misconduct." *Lamb*, 8th Dist. Cuyahoga No. 73144, 1998 Ohio App. LEXIS 3740 at 5-6 (Aug. 13, 1998); *see also Pruitt*, 8th Dist. Cuyahoga No. 96332, 2011-Ohio-5272, at ¶ 12 ("Although [plaintiff] claims the release is against public policy, Ohio courts have consistently held to the contrary.").

{¶ 41} Goss's second assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR